EUTIE E. WOODHOUSE, Admx.

*v.*

LYMAN E. CRANDALL, Receiver.

*Opinion filed June 19, 1902.*

1. TRUSTS—*general deposit in bank does not create trust.* A general deposit with a bank to the credit of the depositor creates only the relation of debtor and creditor, and not that of principal and agent or trustee and *cestui que trust.*

2. SAME—*special deposit creates a trust for the special purpose.* A deposit made by a lessee with a bank for the sole purpose, as shown by the receipt, of securing the lessee's faithful performance of the covenants of a lease, creates a trust in favor of the depositor, and the bank has no right to mingle it with its general funds.

3. SAME—*what does not destroy the identity of fund.* The fact that the original package of money constituting a trust fund is not kept intact or that the trust fund is placed with a larger sum of money in the bank does not destroy its identity, where enough money has always remained in the bank to satisfy the trust fund, since the law presumes the bank withdrew its own money first, rather than that it violated the trust and withdrew the trust fund.

4. SAME—*when equity will aid in restoring a trust fund.* If a trust fund has once been disposed of, no charge can be made against the general estate of the insolvent trustee, in the hands of the assignee, to the exclusion of other creditors; but if it can be shown that the money is in a specified place, equity will take out of that place enough money to satisfy the trust.

MAGRUDER, C. J., dissenting.

*Woodhouse* v. *Crandall,* 99 Ill. App. 552, reversed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding.

THORNTON & CHANCELLOR, (JAMES D. ANDREWS, of counsel,) for appellant:

The deposit having been an actual delivery of money for a special purpose and not deposited in the usual course of business, was a specific deposit and constituted a trust fund. *Anderson* v. *Bank,* 112 Cal. 598; *Montague* v.

*Bank*, 81 Fed. Rep. 602; *Bank* v. *Bank*, 2 Wall. 252; *Cutler*
v. *Bank*, 113 N. Y. 593; *Star Cutter Co.* v. *Smith*, 37 Ill. App.
217; *Bank* v. *Mining Co.* 165 Ill. 103; *Bank* v. *O'Hare*, 119 id.
646; *St. Louis* v. *Johnson*, 2 Dill. 241; *Moreland* v. *Brown*, 86
Fed. Rep. 257; *Massey* v. *Fisher*, 62 id. 958; *In re Johnson*,
103 Mich. 109.

There was, in fact, no evidence showing that in a legal
sense the fund was mingled. *In re Johnson*, 103 Mich. 109.

The fact that money is thrown into a general mass is
only one of the elements of what is, in equity, called a
mingling. There must be a total absence of all notice
and trace of the fund. Notice of the fund to all who may
become possessed of the mass is the important means of
preserving the identity of the fund, and the mere min-
gling of the money in the larger mass is immaterial.
*Trustees* v. *Kirwin*, 25 Ill. 62; *United States* v. *Waterborough*,
28 Fed. Cas. 418; *VanAllen* v. *Bank*, 52 N. Y. 4.

The actual preservation of the identical money is
never required. *Kirby* v. *Wilson*, 98 Ill. 241; *United States*
v. *Waterborough*, 28 Fed. Cas. 418; *Peters* v. *Bain*, 133 U. S.
693; *VanAllen* v. *Bank*, 52 N. Y. 4.

Where trust money is traced into a mass and mingled
with other money belonging to the trustee or depositary,
it devolves upon all persons coming into possession of
the money, with notice, to establish that the trust money
has been dissipated. Drawings out will be presumed to
be other money until the sum is shown to be reduced be-
low the amount of the trust fund traced into the mass.
*Bank* v. *Insurance Co.* 104 U. S. 54; *Slater* v. *Oriental Mills*,
18 R. I. 352; *Taylor* v. *Plumer*, 3 M. & S. 562; *Knatchbull* v.
*Hallett*, L. R. 13 Ch. Div. 696; *Shields* v. *Thomas*, 71 Miss.
260; *In re Johnson*, 103 Mich. 109; *Englar* v. *Offutt*, 70 Md.
78; *Springfield Inst.* v. *Copeland*, 160 Mass. 138; *VanAllen* v.
*Bank*, 52 N. Y. 1.

The burden is upon the trustee or his representatives
to show that the fund has been dissipated or drawn out.
*Bank* v. *Schween*, 127 Ill. 573; *Diversey* v. *Johnson*, 93 id. 567.

Smith, Helmer, Moulton & Price, for appellee:

The total amount of cash found by the receiver in the bank upon his appointment was $1152.66, being less than the $1500 claimed by appellant as a trust fund, so that, under the principle urged by appellant, she is not entitled to recover. *In re Johnson,* 103 Mich. 109; *Kirby* v. *Wilson,* 98 Ill. 247.

While it may not be necessary to point to the particular bank bills that were deposited with the trustee, if the trust property be money, yet there must be a preservation of the distinctness of the trust fund, and there was no such preservation here. *Seiter* v. *Mowe,* 182 Ill. 356; *Peters* v. *Bain,* 133 U. S. 693.

While the rule is that if a party unlawfully mixes and confuses his goods with those of another so that they can not be distinguished, the innocent party will be entitled to take the equivalent of his property from the mass while yet in the possession of the trustee, yet in a case of insolvency of the trustee the rights of third parties are involved and the operation of the rule is checked, and the *cestui que trust* is relegated to a *pro rata* dividend with other creditors. *Seiter* v. *Mowe,* 182 Ill. 351; *Bayor* v. *Bank,* 157 id. 62.

As supporting appellee's position outlined above, and, as we believe, conclusive in favor of appellee's position in this case, we cite the following authorities: *School Trustees* v. *Kirwin,* 25 Ill. 62; *Wetherell* v. *O'Brien,* 140 id. 146; *Mutual Accident Ass.* v. *Jacobs,* 141 id. 261; *Bayor* v. *Bank,* 157 id. 62; *Seiter* v. *Mowe,* 182 id. 351; *Bank* v. *Smith,* 21 Blatchf. 275; *Bayor* v. *Schaffner,* 51 Ill. App. 181.

Mr. Justice Cartwright delivered the opinion of the court:

On March 15, 1893, Charles F. Woodhouse leased to F. P. Furlong certain premises in the city of Chicago. The lease recited that Furlong had deposited with Meadowcroft Bros., bankers, as security for the faithful per-

formance of his covenants contained in the lease, the sum of $1500, which was to remain with Meadowcroft Bros. until the expiration of the lease, for the purpose of paying to Woodhouse any rent which might be due and to discharge any and all liabilities or indebtedness, or both, of Furlong which might exist under the agreements of the lease, in the manner therein specified. The deposit was made, as recited in the lease, in this way: Furlong went to the office of Meadowcroft Bros. and delivered to Frank Meadowcroft, one of the partners, in his private office at the bank, the $1500 in currency, explaining to him upon what condition the money was to be held and used, and that in the event the rent was paid by Furlong the money was to be returned to him. Meadowcroft took the money and signed and delivered the following receipt therefor:

"CHICAGO, ILL., *March 15, 1893.*

"Received of F. P. Furlong the sum of $1500, to be by us held for a period of one year from this date, except upon the happening of the contingency hereinafter mentioned, as security for the faithful performance by said Furlong of his covenants in a certain lease of this date, wherein the said Furlong is lessee and Charles F. Woodhouse is lessor, and the premises demised are the rear room on LaSalle street, No. 4, in the basement of the building known as the LaSalle Block, corner of LaSalle and Madison streets, Chicago, Illinois. Such portion of said sum as will satisfy whatever damage the said Woodhouse may sustain by the default of the said Furlong in the performance of the said covenants of said lease to be paid by us to the said Woodhouse, and after the expiration of six months of the term of said lease, and upon the conditions provided in said lease for so doing, said sum to be held by us to the credit of said Woodhouse, and paid to him, Woodhouse, in six equal installments of $250 each, one installment on the first day of November, A. D. 1893, and one installment on the first day of each succeeding month thereafter during the term of said lease.

MEADOWCROFT BROS."

Meadowcroft retained a duplicate of this receipt, and afterwards, without the knowledge or acquiescence of either Furlong or Woodhouse, turned the money over to

one of the tellers, who mingled it with the funds of the bank. In order to reconcile the books of the firm with the transaction and to conform with their system of book-keeping, Meadowcroft made out the following certificate of deposit, which was never delivered to any one but was pinned to the duplicate receipt in the possession of the bank:

"Certificate of deposit.—Not subject to check.

Established 1860.

' No. 3280.

MEADOWCROFT BROS., BANKERS.

N. W. Cor. Dearborn and Washington Sts.

CHICAGO, ILL., *March 18, 1893.*

"F. P. Furlong has deposited in this bank fifteen hundred & no/100 dollars, payable to the order of Meadowcroft Bros., in current funds, on the return of this certificate properly endorsed, with interest at the rate of four per cent per annum if on deposit six months.     MEADOWCROFT BROS.,

$1500.                 .........., *Cashier.*"

There was no agreement to pay interest on the fund, and the certificate of deposit was made out and used merely as a memorandum to distinguish and identify the fund and show where it had gone. Shortly afterward Meadowcroft Bros. failed, and in June, 1893, suit was begun for winding up the affairs of the partnership. Appellee was appointed receiver, and Charles F. Woodhouse filed his intervening petition, alleging the creation of the trust in his favor; that there was a default by Furlong in the payment of rent, and that the special deposit was turned over to the receiver and was held by him in trust for the purpose for which it was received by Meadowcroft Bros. He asked for an order to pay the deposit mentioned in the receipt to him. The receiver answered, and Charles F. Woodhouse having died, the appellant, as his administratrix, and said F. P. Furlong, filed their supplemental petition to obtain an order for the trust fund. The issue was referred to a master in chancery, who took the evidence and reported that the $1500 was depos-

ited as cash, to be held by Meadowcroft Bros. and paid out according to the terms of the receipt, and he recommended that the prayer of the petition be granted. The court sustained exceptions to the master's report, and entered a decree finding that the deposit created only a credit with Meadowcroft Bros., and that the currency had been mingled with the banking funds of the firm, and giving to petitioners only a *pro rata* dividend with the other creditors of the bank. This decree the Branch Appellate Court for the First District affirmed.

The transaction in this case was not a mere bailment for the safe keeping of a package of money for Furlong, where the identical thing was to be returned to him as a depositor, and it was not a deposit to the general account of the depositor, Furlong, or Woodhouse. The receipt specifies the terms and conditions of the deposit, and shows that it was not for entry on the general account of either of the parties. In the case of a general deposit with a bank to the credit of the depositor, the relation created is not that of principal and agent or of trustee and *cestui que trust*, but is merely that of debtor and creditor. Such deposits belong to the bank and become a part of its general funds, and there is nothing but a liability as debtor to re-pay according to the customs and usages of the business. This deposit was for a specific purpose, for the benefit and security of a third person, (Charles F. Woodhouse,) and it created a trust relation in his favor. The banking firm assumed the position of a trustee and the money deposited constituted a trust fund, which the bank was bound to keep intact for the purpose of the trust. The obligation of the bank was to preserve the sum of $1500 as a trust fund for the person mentioned in the receipt and to apply it to the purposes therein specified, and the title to such trust fund did not pass to the bank as a part of the general funds of the firm. The certificate of deposit was made and attached to the receipt merely for the purpose of identi-

fying and following the fund and showing where it had
been put. That was to conform to the plan of keeping
books adopted by the bank, and the system of book-keep-
ing by the trustee could not affect the substantial rights
of the beneficiaries.

The defense made to the petition and insisted upon
here is, solely, that the fund was mingled with other
moneys of Meadowcroft Bros. so that it could not be
identified, and therefore it could not be recovered. It
has repeatedly been held that if the identity of a trust
fund is lost so that it cannot be traced, the beneficiary
cannot establish a preferential claim or lien against the
general assets of an insolvent estate merely because the
trust fund has gone to swell such general assets. The
mere fact that an insolvent received a trust fund which
he has disposed of or dissipated, or mingled with his
other funds and property, so that it is impossible to
trace the fund and show where it is, will not enable the
*cestui que trust* to establish a lien against the assets of
the estate. (*Union Nat. Bank* v. *Goetz*, 138 Ill. 127; *Mutual
Accident Ass.* v. *Jacobs*, 141 id. 261; *Estate of Seiter* v. *Mowe*,
182 id. 351.) On the other hand, if the trust fund can be
traced and identified, the *cestui que trust* has a right to it
and to the aid of a court of equity to reach it and com-
pel its transfer to him. His right will not be affected by
any change in the form of the trust property by the trus-
tee, provided that the fund can be identified and is not
so mixed up with other moneys or property that it can
no longer be specifically separated. (2 Pomeroy's Eq.
Jur. sec. 1058.) Concerning this rule the same author
says (sec. 1048): "This universal rule forms the protec-
tion and safeguard of the rights of the beneficiaries in
all kinds of trust. It enables them to follow trust prop-
erty,—lands, chattels, funds or securities, and even of
money,—as long as it can be identified, into the hands
of all subsequent holders who are not in the position of
*bona fide* purchasers for value and without notice. It fur-

nishes all those distinctively equitable remedies which are so much more efficient in securing the beneficiary's rights than the mere pecuniary recoveries of the law." No change in the state or form of trust property can divest it of the trust. So long as it can be identified, either as the original property of the *cestui que trust* or as a product of it, equity will follow it, and the right to reclaim it fails only when the means of ascertaining its identity fails. (*Union Nat. Bank of Chicago* v. *Goetz, supra.*) In the case of *Wetherell* v. *O'Brien*, 140 Ill. 146, although the deposit was a general one and there was no trust or trust fund, the court stated the general rule, as follows (p. 151): "Where a trustee changes the form of the trust property, the right of the beneficial owner to reach it and compel its transfer may still exist if the property can be identified as a distinct fund, and is not so mixed up with other moneys or property that it can no longer be specifically separated." In *Pennell* v. *Deffell*, 4 DeG., M. & G. 372, it was said: "That as between *cestui que trust* and trustee, and all parties claiming under the trustee otherwise than by purchase for valuable consideration without notice, all property belonging to a trust, however much it may be changed or altered in its nature or character, and all the fruit of such property, whether in its original or in its altered state, continues to be subject to or affected by the trust."

The material question in this case, therefore, is, whether the trust fund deposited by Furlong can be traced and identified, and upon that question the law is well settled that it is not necessary the money or bank bills should be identified. The suit is not to recover a specific thing, such as particular pieces of money or bills, but a certain sum of money held in trust, and it is the identity of the fund, and not the identity of the money or currency, which is to be established. In the early case of *School Trustees* v. *Kirwin*, 25 Ill. 62, the court said (p. 65): "It is not necessary, if the trust be moneys, that

the particular coin or kind of money or the individual pieces shall be identified in order to pursue it, but its identity as a fund must be preserved so that it can be distinguished from all other money. So long as it can be followed as a separate and independent fund, distinguishable from any other fund, it can be pursued." The court held that appellants would be entitled to an enlarged decree in their behalf if the facts established the identity of the fund, but they did not. Again, in *Kirby* v. *Wilson*, 98 Ill. 240, the court, in passing on instructions, said (p. 247): "If these instructions conveyed to the jury the idea that no recovery could be had unless the identical bills received by Alexander for the cattle came into the hands of the executor, then they were erroneous." It makes no difference, then, in tracing this fund, that the original package of bills was not preserved, but the question is whether the trust fund can be followed and found.

Again, it makes no difference on the question of identity that the fund was mingled with other moneys of the bank. That question was also settled in *Kirby* v. *Wilson*, *supra*, where it was held that the identity of the fund is not destroyed and lost merely by being mingled with other moneys of the trustee. In that case, Alexander sold cattle and received the proceeds in trust to pay the same over to the Wilsons. He died, and had on his person at the time $20,500, part of which (something over $10,000) was obtained on the sale of the Wilson cattle and the balance from the sale of other cattle in which the Wilsons were not interested. All this money the widow, after his death, deposited in the bank in her name, and after the executor qualified she gave him a check for the whole amount which she so received and placed in the bank. The court stated the claim on behalf of appellants as follows (p. 245): "The argument is, that plaintiffs, to recover in this case, must prove that Alexander sold the Wilson cattle and retained the identical money

received from the sale of the cattle, separate and un-mixed with other funds, and that such money, unmixed, passed into the hands of the defendant after the death of Alexander, but if the money was mixed with other funds by Alexander before he returned home, or was com-mingled with other money by his wife after his death, no recovery can be had by the plaintiffs." The court held that the portion of the proceeds received for the cattle of the Wilsons· could be traced and identified as their particular property and might be followed into the hands of the executor, and that they had a preferential claim thereto over general creditors. The court said, if Alex-ander had disposed of the money in his lifetime the case would have been different, but as he retained it and his executor took it, the Wilsons were justly and equitably entitled to a preference. It was decided in *In re Hallett's Estate*, 13 L. R. Ch. D. 696, that money held in a fiduciary capacity by one who places it in a bank can be recovered from the bank, although mixed with the depositor's own money; that the person for whom he held the money can follow it and has a charge on the balance in the banker's hands, notwithstanding the mingling of the funds. The presumption in such a case is, that the money drawn out by the depositor is his own, even if the trust money and his own are in one account, rather than that he had dis-regarded his trust and violated his duty. The Supreme Court of the United States, approving of that decision, held in *Central Nat. Bank of Baltimore* v. *Connecticut Mutual Life Ins. Co.* 104 U. S. 54, that although the relation be-tween a bank and its depositor is that merely of debtor and creditor and the balance of account is only a debt, if the money is held by the depositor in a fiduciary ca-pacity its character is not changed by being placed to his credit with his own money in his bank account. Money having been placed in the vaults of the bank, the law presumes that the trustees drew out their own money first, and that what remained belonged to the trust. When

the firm failed, there was remaining in the vault where this money was put $1152.66 in cash, which the receiver obtained, and the legal presumption is that this belonged to the trust fund. The evidence proved that the fund had been encroached upon to some extent, but the law does not presume fraud or wrongdoing beyond what is established by the proof.

This case is different from the other cases which have been before the court. In the first case of *School Trustees* v. *Kirwin, supra,* the school treasurer, who was clerk and teller in Kirwin's bank, received $1292.37 and deposited it in the bank in his own name. All the money found in the vault of the bank at Kirwin's death was $715.45, none of which was identified as school funds, except $275 in a certain marked bag. This was awarded to the school trustees, but the money never appeared on the books of the bank as a part of the school fund or school money. The contrary appears in this case. The fund appeared only as a trust fund by the receipt which specified the trust and to which the certificate of deposit was pinned. This certificate, the evidence shows, was made to identify and distinguish the fund and to show where it was. It is also evident that the presumption of law that the trustee took out his own money rather than the trust fund was not relied on in that case to prove the fact that the money remaining was school money. In *Union Nat. Bank* v. *Goetz, supra,* the complainants, so far from attempting to identify any particular property in the hands of the receiver as having been purchased with the moneys borrowed from appellant, or the proceeds thereof, expressly averred in their bill that such identification was impossible. It was impossible to find or point out anything which was the product of a trust fund, if there had ever been a trust. In *Wetherell* v. *O'Brien, supra,* $1900 was deposited with a bank, but it was a general deposit, which created only the relation of debtor and creditor and no trust attached to the money depos-

ited. The insolvent turned over to the assignee less than $100, which fact proved that the money deposited had been substantially all dissipated and disposed of. The banker was to take care of the money until he could find a place to lend it, and it was deposited on general account in the savings department. A pass-book was given to the depositor, showing the deposit and the manner and mode of checking out the money. The fund was subject to check, and was mingled with the other funds of the bank with the consent of the depositor. It would have been necessary for the depositor to surrender the pass-book or give a check for the amount of the deposit if a place had been found to loan the money. There was no trust in that case. It cannot be claimed that a trust was not created in this case. In *Mutual Accident Ass.* v. *Jacobs, supra,* the accident association gave Kean & Co. a check on another bank for a specified purpose, and Kean & Co., with the knowledge of the association, mingled the money with the general funds in the bank in the same manner as money deposited by other depositors. It was plain, from the evidence, that the accident association knew the money was drawn out and used by the bank in the same manner as other funds in the usual course of business, and the deposit was treated as a general deposit. In *Bayor* v. *American Trust and Savings Bank,* 157 Ill. 62, a depositor holding an ordinary certificate of deposit claimed that the banker agreed to put away the money in a separate package. The court held there was no such agreement and no relation different from the case of a general deposit. In *Estate of Seiter* v. *Mowe, supra,* there was an attempt to charge the general assets of the estate with money received by the insolvent, as conservator, six years before, and the court said: "It is admitted by counsel for appellant, in their able argument, that the fund is incapable of identification or distinguishable from the other assets of the estate." The fund could neither be found nor identified among the assets of the

assignee. During the six years after Seiter received the money he had used it indiscriminately with his other assets, and all that complainant could say he knew was that Seiter had once received a certain sum of money as conservator. In this case the money was received March 15, 1893, and the failure was in the following June, and the evidence supported by the legal presumption establishes the identity of the fund and shows what became of it. If it had been shown that the trust fund was withdrawn or actually dissipated, so that none of it remained in the bank, the rule would necessarily be different. If the fund has once been disposed of, no charge can be made against the general estate in the hands of the assignee to the exclusion of other creditors, but, as we have seen, the fact that the same bills were not retained or that the fund is traced into a larger sum of money in the same bank does not destroy its identity. Equity lays a charge, in such a case, on the fund into which the trust money is traced, and not on the general estate of the trustee. The only question here is what is a sufficient identification, and the rule is, that if it can be shown the money is in a specified place, equity will take out of that place enough money to satisfy the trust. In this case, we think that the trust fund was traced and identified by legitimate evidence and rules of law for ascertaining its identity.

The decree of the superior court of Cook county and the judgment of the Appellate Court are reversed, and the cause is remanded to the superior court, with directions to order the payment by the receiver to the petitioners of the amount of $1152.66 cash remaining in the bank and received by him when he took possession.

*Reversed and remanded.*

Mr. CHIEF JUSTICE MAGRUDER, dissenting.