## SHOPERT v. INDIANA NATIONAL BANK ET AL.

[No. 6,417.   Filed January 31, 1908.   Rehearing denied April 7, 1908.]

1.  BANKS AND BANKING.—*Special Deposits.—Bailment.—Trusts.*—
    A special deposit in a bank creates a trust or bailment relation,
    while a general deposit creates the relation of debtor and creditor.
    p. 477.
2.  RECEIVERS.—*Title.*—Receivers take property subject to all legal
    and equitable claims.   p. 477.
3.  TRUSTS.—*Following Funds.*—A trust fund may be followed and
    recovered wherever it can be identified, except in the hands of
    a *bona fide* purchaser without notice; but if the fund be money it
    may be recovered if it can be traced into any specific fund.   p. 477.
4.  BANKS AND BANKING.—*Special Deposits.—Trusts.*—Money left
    at a bank to be delivered to a shredder company on condition that
    a machine delivered by such company to the plaintiff should ful-
    fill, within ten days, a certain guaranty, otherwise such money to
    be delivered to the plaintiff, constitutes a special deposit; and
    the receiver of such bank, on the failure of the machine to fulfill
    such guaranty, is required to pay such sum to the plaintiff out of
    the general funds of such bank, such money not being kept sepa-
    rate.   p. 477.

From Elkhart Circuit Court; *James S. Dodge,* Judge.

Suit by Horace Shopert against the Indiana National
Bank of Elkhart and others.   From a decree for defend-
ants, plaintiff appeals.   *Reversed.*

*J. D. Osborne,* for appellant.
*Perry L. Turner,* for appellees.

HADLEY, P. J.—Appellant sued appellees to recover $500
in money alleged to have been left with appellee bank as
a special deposit.   The facts are undisputed and in sub-
stance are as follows:   In September, 1903, appellant con-
tracted with the American Shredder & Husker Company
for one of their machines.   He was to give $500 and a Mc-
Cormick Husker for the same, provided said machine ful-
filled the guaranty after ten days' trial.   The machine com-
pany directed that he should leave the money at a bank

subject to their order, and on the condition that said machine filled said guaranty. Appellant went to the bank, which was the bank at which he transacted his banking business and where he had a small deposit, drew out his balance, placed it with the money he had on his person, which in all amounted to $480, and gave it to the president of the bank at the cashier's window, the cashier also being present, and at the time told said officers of the bank that he was going to buy a shredder, provided it worked satisfactorily after ten days' trial. The arrangement between him and the shredder company was that appellant should put into said bank the sum of $500, subject to the order of said shredder company if it filled a guaranty to work well after ten days' trial, if not, then to be subject to the order of appellant. He thereupon paid into said bank the sum of $480. One of said officers of said bank received it and wrote a certificate of deposit in the presence of appellant, but appellant did not see the certificate of deposit or know anything of its contents. This certificate of deposit was as follows:

"Elkhart, Indiana, October 5, 1903. Horace Shopert has deposited in this bank $480 payable to the order of the American Shutter & S. Co., in current funds on return of this certificate properly indorsed. Provided husker fills guaranty after ten days' trial. This deposit is not subject to check.
W. L. Collins, cashier.
Hold until notified to remit by H. Shopert."

This certificate was placed in an envelope and retained by the bank, the banker saying: "Now, it's all right." Appellant received no deposit slip, certificate of deposit, or other writing for the money so deposited. Subsequently the shredder company sent the bill of lading for the machine to said bank, with instructions to turn the same over to appellant when he had deposited $500 subject to the order of said company, upon the successful operation of the husker

for ten days. On October 23 appellant left $20 additional with said bank under the same terms and conditions, and the same was received in like manner as the $480, thus completing the sum of $500, and at said time received the bill of lading for the machine. Afterwards, and within the ten days, appellant notified the bank that the machine had not filled the guaranty and that he did not think it would do so, and that the bank should not pay the money to the machine company. The president of the bank replied that a man had been in the day before, representing the company, and ordered them to pay the money to the company at once, but that they did not do it, and that they would not pay it to anybody without appellant's orders, saying: "That money is yours."

The machine did not fill the guaranty, and it was afterwards returned and the contract rescinded. Meanwhile, and before appellant made demand for the return of the money, a receiver was appointed for the bank. There was cash on hand in said bank, at the time the receiver took charge, to the amount of $3,293.75. There was no separate package of $500 in said bank at said time.

The court made a general finding and rendered judgment for appellant for the sum of $500, to be paid *pro rata* as other creditors. Appellant moved to modify the judgment by ordering that said judgment be a preferential claim over the general creditors, and that the receiver be ordered to pay the same in full out of the funds in his hands. This motion was overruled and exception taken. Motion for a new trial was then filed by appellant, which was also overruled.

The only substantial question in this case is whether the facts just stated constitute a special deposit, and said amount of money should be paid to appellant in full as a preferential claim.

Deposits in banks are either general or special. *McLain* v. *Wallace* (1885), 103 Ind. 562.

In the case of a special deposit the bank is merely a trustee or bailee, the property right being in the depositor, and the relation of debtor and creditor is not thereby

1. created. But a general deposit vests the property in the bank, and establishes the relation of debtor and creditor. *McLain* v. *Wallace, supra; Union Nat. Bank* v. *Citizens Bank* (1899), 153 Ind. 44; *Anderson* v. *Pacific Bank* (1896), 112 Cal. 598, 44 Pac. 1063, 32 L. R. A. 479, 53 Am. St. 228; *Woodhouse* v. *Crandall* (1902), 197 Ill. 104, 64 N. E. 292, 58 L. R. A. 385.

It is also a rule of law that receivers take property which comes into their hands for administration subject to all legal and equitable claims. *Union Nat. Bank* v. *Citizens*

2. *Bank, supra; Lamb* v. *Morris* (1889), 118 Ind. 179, 4 L. R. A. 111.

It is also established that a trust fund may be followed and recovered even after it has changed its character or lost its original form, and the beneficiary may pursue

3. it and reclaim it so long as it may be identified; provided it has not come into the hands of a *bona fide* purchaser without notice. In case the fund consists of money, identification does not require that the identical bills or coins be discovered, but the ascertainment of the fund into which it has entered and lodged is sufficient. *Windstanley* v. *Second Nat. Bank* (1895), 13 Ind. App. 544; *Pearce* v. *Dill* (1897), 149 Ind. 136; *Massey* v. *Fisher* (1894), 62 Fed. 958; *Kimmel* v. *Dickson* (1894), 5 S. Dak. 221, 58 N. W. 561, 25 L. R. A. 309, 49 Am. St. 869; *Woodhouse* v. *Crandall, supra.*

Was this a special deposit? Clearly it was not a general deposit, it was a specific sum for a specific purpose, the payee determinable after the lapse of a specific time

4. and the happening of a specific contingency. After the bank had delivered to appellant the bill of lading for the machine the bank could not rightfully deliver the money either to the appellant or to the shredder company

until the contingency was determined. It is clear that the bank so understood its position, as each of said parties sought to control the fund before the expiration of the ten days stipulated for trial, and the bank clearly indicated its purpose to hold the fund until this question was settled. Appellant evidently intended to make a special deposit, since he drew out a small balance he had on deposit and placed it with the special fund. It is true he testified that he did not understand that he was to receive back the identical money he left with the bank; but this may have arisen from his evident unfamiliarity with business terms and customs, and no such idea was suggested to the banker. Appellant had a very clear understanding of what he wanted to do, the exact manner in which it was to be done was left with the banker, in whom he had confidence and who transacted his business. The officers of the bank who transacted the business and appellant agree in every substantial particular as to what agreements were made and instructions given with reference to the deposit. It is well settled that a bank deposit is subject to any agreement which the depositor and banker may make with regard to it, so long as the rights of third parties are not injuriously affected. *Lamb* v. *Morris, supra,* and cases cited.

By the agreements and instructions aforesaid the bank was made the trustee of the fund with certain duties to perform with reference thereto: one was to preserve it intact, the other to deliver it at the proper time to the proper person. Under these conditions the bank had no right of property in it, and could not invest itself with such right by any act of its own without the knowledge of the party or parties who had such interest.

In the case of *Woodhouse* v. *Crandall, supra,* Woodhouse leased a building to Furlong. The conditions of the lease were that Furlong was to deposit $1,500 with Meadowcroft Bros., bankers, to be held as security that Furlong would comply with the terms of his lease. Within six months of

the termination of the lease and Furlong's compliance therewith the money was to be returned to him. If he failed, whatever damages resulted thereby to Woodhouse was to be paid to him by said bank and deducted from the sum so deposited, and the balance, if any, returned to Furlong. The bank delivered to Furlong a receipt for the money, setting out the stipulations of the deposit, as before recited in substance, and also made out a certificate of deposit very similar to the one in this case, which the bank kept. The money was received by the bank and mingled with the other funds. Before the expiration of the lease the bank failed, and Crandall was appointed receiver thereof; intervening petition by Woodhouse asking that the receiver be ordered to pay said sum to him as a trust fund, Furlong having defaulted in his rent. The lower court allowed the claim as against the estate, but adjudged it was a general claim and should be paid *pro rata.* The supreme court reversed this decision, saying in the course of the opinion: ''The transaction in this case was not a mere bailment for the safe-keeping of a package of money for Furlong, where the identical thing was to be returned to him as a depositor, and it was not a deposit to the general account of the depositor, Furlong, or Woodhouse. The receipt specifies the terms and conditions of the deposit, and shows that it was not for entry on the general account of either of the parties. In the case of a general deposit with a bank to the credit of the depositor the relation created is not that of principal and agent or of trustee and *cestui que trust,* but is merely that of debtor and creditor. Such deposits belong to the bank, and become a part of its general funds, and there is nothing but a liability as debtor to repay according to the customs and usages of the business. This deposit was for a specific purpose, for the benefit and security of a third person (Charles F. Woodhouse), and it created a trust relation in his favor. The banking firm assumed the position of a trustee, and the money deposited constituted a trust fund, which the bank was bound

to keep intact for the purpose of the trust. The obligation of the bank was to preserve the sum of $1,500 as a trust fund for the person mentioned in the receipt, and to apply it to the purposes therein specified, and the title to such trust fund did not pass to the bank as a part of the general funds of the firm. The certificate of deposit was made and attached to the receipt merely for the purpose of identifying and following the fund and showing where it had been put. That was to conform to the plan of keeping books adopted by the bank, and the system of bookkeeping by the trustee could not affect the substantial rights of the beneficiaries.''

In the case of *Anderson* v. *Pacific Bank, supra,* money was deposited by Anderson with the bank to secure sureties procured by the bank on certain bonds. A certificate of deposit, in the usual form, was given to Anderson, which, in addition to the usual words, stipulated: ''Payable only on release of bonds.'' The money, without the knowledge of Anderson, was placed in the general funds. The bank became insolvent, the bonds released, and Anderson demanded the return of his money as a specific deposit. The court held it a special deposit, saying: ''The money was delivered in a manner strictly in accord with a contract of pledge, but quite inconsistent with the notion of an ordinary banking deposit. The so-called certificate of deposit issued by the bank is not a certificate of deposit, but a mere receipt, expressing, though briefly, the contract of pledge. Every contract by which possession of personal property is transferred as security only is to be deemed a pledge. * * * Under such a contract the fact that the bank afterward wrongfully commingled and used the funds, if it did do so, cannot be urged by it in defense as effecting any change in the contractual relations and rights of the parties. It would be but allowing it to plead its own wrongdoing to its own advantage.''

Other authorities to the same effect are *Windstanley* v. *Second Nat. Bank, supra; Massey* v. *Fisher, supra; Kim-*

*mel* v. *Dickson, supra; Peak* v. *Ellicott* (1883), 30 Kan. 156, 1 Pac. 499, 46 Am. Rep. 90.  Under the foregoing authorities the uncontradicted evidence clearly shows that said deposit of appellant was a special deposit.  This being true, and the uncontradicted evidence showing that said deposit went into the general funds of the bank without the knowledge or consent of appellant, such general funds became impressed with the trust; and there being more than the amount of said deposit in the general funds at the time the receiver took charge, it came into the hands of such receiver subject to the trust, and sufficient amount of said fund should be applied to the payment of such trust to satisfy the same before distribution to the general creditors.  It never having been the property of the bank, no portion of it should be applied to the payment of its debts.  The motion to modify the judgment should have been sustained.

Cause reversed, with instructions to the lower court to modify said judgment, as asked in said motion.