The People of the State of Illinois on Relation of Oscar Nelson, Complainant, v. Dahlgren State Bank, Defendant, Appellant. Joe De Witt et al., Appellees.

Opinion filed February 1, 1932.

GILBERT & GILBERT and HARRY ANDERSON, for appellant.

CREIGHTON & THOMAS, for appellees.

MR. JUSTICE EDWARDS delivered the opinion of the court.

On July 23, 1930, the auditor of public accounts closed the Dahlgren State Bank, appellant, as insolvent. Subsequently, Claud Crocker, on September 5,

1930, was appointed receiver. The appellees, by intervening petitions filed in the circuit court of Hamilton county, in proper proceedings there pending, asked that they be decreed preferred claims on the assets of the bank, to satisfy the value of certain Liberty Bonds previously left with the bank for safe-keeping. The chancellor, upon hearing, held in their favor and decreed that they have preferred claims on the general assets of the insolvent bank, from which decree the appellant has prosecuted this appeal.

The material facts, with one exception concerning bonds to the amount of $600, are not disputed. Appellees deposited Liberty Bonds, amounting to $18,100, with the bank, taking certificates therefor, which stated that the bonds were to be returned to the several owners upon demand and the surrender of the certificates properly endorsed.

The bank, on November 30, 1929, borrowed from the Citizens National Bank of Evansville, Indiana, the sum of $8,000, giving its note therefor, and as collateral security notes aggregating $11,058 face value, secured by real estate mortgages. On February 10, 1930, a second loan, in the sum of $7,000, was obtained from such Citizens National Bank, and $10,000 of the bonds in question were deposited as collateral therefor. On March 4, 1930, a renewal note, to replace the one of $8,000, was executed, and the Citizens National Bank demanding that the collateral therefor be bonds instead of notes secured by mortgages, the Dahlgren State Bank deposited with said Citizens National Bank $5,000 more of appellees' bonds, the renewal note stating on its face that the collateral for same was $5,000 Fourth Liberty Bonds and $3,000 on other note. Whereupon said mortgage notes, in such sum of $11,058, were returned to the Dahlgren State Bank, placed in its files, and in such condition came into the possession of the receiver. The proceeds of both loans were deposited in the Citizens National Bank to the

credit of the Dahlgren State Bank, and by the latter bank drawn against from time to time, in the course of its business, to cover clearings with other correspondent banks.

From the time of securing the first loan to the date of its closing, the Dahlgren State Bank received deposits in ordinary course, and made loans aggregating $5,847.19, of which amount $2,884.40 was loaned after February 10, 1930. Certain bonds, aggregating $2,500, owned and deposited by appellee Ben Konert, were sold by the bank at his direction, and certificates of deposit executed therefor in his name. About these last mentioned bonds there is no dispute, and they are not involved in this controversy.

At the time the bank closed it held unsecured loans of $82,650.44, and loans secured by real estate mortgages amounting to $24,101.57. Cash in the bank and its correspondents, according to the receiver's schedule, amounted to the sum of $829.15. On September 18, 1930, the Citizens National Bank sold the bonds deposited with it on account of said loans, for $15,740.41, deducted the amount due it on the two loans, and deposited the balance, or $654.45, to the credit of the Dahlgren State Bank.

It appears from the testimony that $15,600 of appellees' bonds were sent to the Citizens National Bank. As before shown, $15,000 were deposited as collateral for the two loans respectively of $8,000 and $7,000. What became of the remaining $600 of bonds is not shown by the evidence. All the bonds sent to the Evansville bank are described in the testimony, as to ownership, number and denomination; however, there is no word of proof as to the time of their transmission or delivery, nor as to which appellees were the owners of the bonds deposited to collaterally secure the different loans, nor as to which appellees were the owners of the $600 bonds sent for some purpose not disclosed by the record.

It is conceded that the Dahlgren State Bank had no title to any of such bonds, nor right to use them for its own purposes; that appellees gave it no authority to do so, and that its conversion of the bonds was unwarranted and wrongful.

The question involved is whether appellees are entitled to have a trust impressed upon the assets of the Dahlgren State Bank which entitled them to a preferred lien thereon as against the general creditors. The relation of appellees to said bank, regarding these bonds, was that of trust, and hence fiduciary in character. *Woodhouse v. Crandall,* 197 Ill. 104. Furthermore, as a consequence of such relationship, whatever proceeds resulted from the sale or hypothecation of the bonds were impressed with a trust. *Leach v. Sanborn State Bank,* 203 Iowa 401, 212 N. W. 694, 697, and cases cited.

In order that a preferential claim, based upon the theory of a trust, be enforced against the assets in the hands of the receiver of an insolvent bank, the trust funds must be traced into the assets. In *Woodhouse v. Crandall, supra,* the rule in Illinois is stated to be: "So long as it can be identified, either as the original property of the *cestui que trust,* or as a product of it, equity will follow it, and the right to reclaim it fails only when the means of ascertaining its identity fails."

In cases where the trust property has been converted, and the proceeds can be traced into specific funds or specific identified property, the preferred claim cannot be allowed against the general assets of the trustee, but only as to such fund or assets as it is shown the proceeds of the trust property went into, and only to the extent they were placed therein. *Woodhouse v. Crandall, supra,* at page 116; *Macy v. Roedenbeck,* 227 Fed. 346; *Cavin v. Gleason,* 105 N. Y. 256, 11 N. E. 504; *Drovers' & Mechanics' Nat. Bank v. Roller,* 85 Md. 495, 36 L. R. A. 767.

At the time of making the $8,000 loan on November 30, 1929, the Dahlgren State Bank took from its assets notes secured by real estate mortgages of the face value of $11,058, and deposited same as collateral for the loan. On March 4, 1930, this note was renewed; at which time there was deposited $5,000 more of such bonds, which, together with $3,000 of the amount deposited with the $7,000 loan, was stated on the face of the renewal note to be its collateral. Upon this being done, the Citizens National Bank returned to the Dahlgren State Bank such notes in the sum of $11,058. The consideration for the return of these notes was the deposit of the Liberty Bonds. In other words, by turning over to the Citizens National Bank the bonds belonging to certain of appellees, the Dahlgren State Bank redeemed its own notes which had passed from its control when the $8,000 loan was originally made. The bonds were exchanged for the notes, which found their way back to the files of the Dahlgren State Bank, and thus came into the possession of the receiver. The effect of the transaction was that the latter bank converted such bonds, and received in return the said notes. It thereby changed the form of the trust property, which, in its altered state, came into the custody of the receiver. A preferred claim should therefore be allowed against said notes, or their collectible value, to the extent of the bonds which were deposited in their stead, in favor of such of appellees as are the owners of such bonds,—the unfortunate feature of which is that the record is devoid of any evidence bearing upon the question as to which of appellees owned said bonds; hence the chancellor, being unable to find the ownership of such bonds, could not decree a preferred claim against the avails of the notes for which they were substituted.

The proceeds of the bonds, collaterally deposited to secure the $7,000 loan, were passed to the credit of the Dahlgren State Bank, and by it used in ordinary course

of business. They were mingled with the general funds of the bank; however, they did not lose their character as trust funds, and were to be regarded, in equity, as in the form of cash on hand in such bank and its correspondents, and under the authority of *Woodhouse v. Crandall, supra,* such of appellees as were the owners of the bonds represented by such fund in its converted state could have priority against the amount of cash on hand in such bank and its correspondents at the time it was closed as insolvent, which the proof shows to be $829.15.

To establish such priority it would be necessary to prove the ownership of the bonds collaterally securing said $7,000 loan, and as before stated, there is nothing in the proof to show which of appellees were such owners. The $600 bonds, or their proceeds, not being traced into any specific fund or property, no preferred claim could be allowed their owners because of their conversion.

Appellees urge that from November 30, 1929, to date of the bank's closing, it made loans to its customers, and that they should have a preferred claim against the notes representing such loans, or their collectible avails. It appears that during this time the bank was taking general deposits to a considerable amount from its customers. Whether the loans in question were made from such general deposits, or from the funds derived from the placing of the bonds as collateral, does not appear in the proof. Moreover, the presumption exists that the officers of the bank did not loan the trust funds. *Leach v. Sanborn State Bank, supra.* There is nothing in this contention.

As to the $654.45 deposit in the Citizens National Bank, being the balance remaining after deducting its claims against the Dahlgren State Bank from the sum realized from the sale of the $15,000 of bonds, this of course belongs to such of appellees as were the owners of the bonds so sold. However, as previously ob-

served, $15,600 of bonds belonging to appellees were sent to the Citizens National Bank, of which amount $15,000 were sold. There were 14 appellee owners of the gross amount of bonds so delivered to such Citizens National Bank. Which ones were the owners of the amount sold has not been shown; hence there is no way of determining which of the 14 owners is entitled to such sum now on deposit with the latter bank, nor which person or persons owned the $600 bonds as to whose disposition the record is silent.

The chancellor decreed that appellees have preferred claims against the general assets of the insolvent bank, to be paid by the receiver thereof. Under the authorities heretofore cited, no power existed to declare preferred claims against the general assets, but only against such of the assets as were shown to be the altered form of the converted trust property.

There was no proof as to who owned the bonds deposited as collateral for the $8,000 loan; no evidence as to whose bonds were pledged to secure the $7,000 loan. The funds or property against which these were chargeable as preferred claims were not shown, nor would the avails as to each be the same; neither was there any testimony as to who owned the $600 of bonds. Without these items of proof no decree could be entered as to the preferred claims of the respective appellee owners, as the chancellor could not determine which fund or property to charge with the individual claims of the various bond owners.

The decree is reversed and the cause is remanded.

*Reversed and remanded.*