Common Pleas Court of Cuyahoga County.

GIOVANNA BRANCIFORTI, ET AL. V. NINETY-EIGHTH REALTY CO., ET AL.

Decided February 2, 1934.

*Buonpane & Buonpane*, for plaintiff.

*John W. Bricker*, attorney general, *L. F. Laylin*, special counsel, *J. R. Gates* of counsel for defendant, Ira J. Fulton.

CORLETT, J.

The only question involved in this case is whether money

deposited in a bank in "escrow" is a fund of such character as to give it preference over general creditors after the assets of the bank have been taken possession of by the superintendent of banks for the purpose of liquidation under the law of this state. The question is raised by a demurrer filed by the plaintiffs to the answer of Ira J. Fulton, Superintendent of Banks of the state of Ohio, in charge of the liquidation of the Union Trust Company of Cleveland, Ohio. The undisputed facts are as follows:

On or about the 21st day of February, 1933, the plaintiffs entered into a contract with the defendant, the Ninety-eighth Realty Company, a corporation, by which said defendant agreed to sell and plaintiffs agreed to buy certain real estate, and on the same day, namely, the 21st day of February, 1933, the plaintiffs, Giovanna Branciforti and Salvatore Branciforti, together with the defendant, the Ninety-eighth Realty Company, executed and delivered to the Union Trust Company certain escrow instructions, a copy of which is attached to the answer of Ira J. Fulton, Superintendent of Banks, marked "Exhibit A" and made a part of the answer.

On said day the Ninety-eighth Realty Company, pursuant to the terms of the escrow, delivered to the Union Trust Company in escrow, a warranty deed duly signed and acknowledged to Giovanna Branciforti as grantee, covering the premises referred to in plaintiff's petition, and plaintiff Giovanna Branciforti delivered to the Union Trust Company a certain pass book representing a then existing savings account in the banking department of the Union Trust Company in the name of Giovanna Branciforti, said savings account being known as "Foreign Savings Account No. 10046," accompanied by a withdrawal order against said account in the amount of $2,990.00 payable to the Union Trust Company. The sale price of the property being $3,490.00, the balance of the purchase price was to be covered by a mortgage in the sum of $500.00 to be executed by the plaintiffs to the Union Trust Company, the proceeds thereof to be paid to the Ninety-eighth Realty Company.

On the same date that the pass book and the withdrawal order for the sum of $2,990.00 was given to the Union Trust Company, said bank charged the savings account with the amount of the withdrawal order and credited an account known as "Escrow Deposit Account" in the banking department of the Union Trust Company, the transaction consisting merely of a transfer of credit from one account in the banking department of the Union Trust Company to another account in the same department. A few days thereafter, namely on the 27th day of February, 1933, under an order duly issued by the superintendent of banks, the Union Trust Company went on a restricted withdrawal basis, said withdrawals being limited to 5% of the then existing obligations. On the 15th day of June, 1933, the defendant Fulton, as Superintendent of Banks of the state of Ohio, took possession of the business and property of the Union Trust Company, as provided by law, for the purpose of liquidation.

Subsequently thereto the plaintiffs filed a claim for preference, demanding the immediate payment of the deposit and the delivery of the several documents received by the Union Trust Company in escrow to the Land Title Guaranty & Trust Company of Cleveland, Ohio, as provided in the escrow agreement. This claim for preference was rejected by the liquidator, and the petition in this case was filed by the plaintiffs, praying that the defendant, Ira J. Fulton, as Superintendent of Banks in charge of the liquidation of the Union Trust Company, be required to make delivery of the deed to the plaintiffs herein and to set aside in cash as a special deposit or as a preferred claim on behalf of defendant the Ninety-eighth Realty Company of the proceeds covering the withdrawals from the aforesaid savings account, and for such other relief as plaintiffs might be entitled to in equity.

The defendant, Ira J. Fulton, superintendent of banks filed an answer admitting the facts substantially as stated above.

To this answer of the superintendent of banks the plaintiffs have filed a demurrer upon the ground that the same

does not set forth facts sufficient to constitute a defense to the action. .. .. :: .:: ˉ ... ..

So far as this court has been able to find, no court in this state has decided this identical question. In considering the facts in this case we should keep in mind the definition and character of an "escrow." An "escrow" has been defined by the courts and by text writers on the law of real property as "a deed, bond or other written engagement delivered to a third person to be delivered by him to the grantee only upon the performance or happening of certain conditions *upon which the transmission of title is complete;* but *no title passes until the fulfillment of the condition.*"

Therefore the question to be determined by this court is whether the right and title to this fund passed to the Union Trust Company and upon the superintendent of banks taking possession of the assets for liquidation became part of the general assets to be shared in by the general creditors of the bank. In the brief filed by the defendant the court's attention is called to Section 710-165, General Code which reads as follows:

"Mingling of property or securities, prohibited. No property or securities received or held by any trust company in trust shall be mingled with the investments of the capital stock or other properties belonging to such trust company or be liable for its debts or obligations. Moneys pending distribution or investment may be treated as a deposit in the trust department, or may be deposited in any other department of the bank, subject in other respects to the provisions of law relating to deposit of trust funds by trustees and others."

It will be seen that the first part of this section provides that property or securities received or held by any trust company in trust shall not be mingled with the investments of the capital stock or other property belonging to the trust company or be liable for its debts or obligations but that, as provided in the latter portion of the section moneys pending distribution of investment may be treated as a deposit in the trust department or may be deposited in

any other department of the bank. And it has been held by recent decisions of the Supreme Court of this state that—

"As to such funds the relation of the bank and trustee is as *debtor and creditor* and funds thus deposited may be used by the bank in its general business as other assets, and that the rights of claimants to such funds so deposited are no greater than or different from those of general depositors, and that upon liquidation of the bank they share proportionately in the distribution of the assets."

*McDonald, Admr.,* v. *Fulton, Supt. of Banks,* 125 Ohio St., 507. *Fulton, Supt. of Banks* v. *Gardiner, et al,* 127 Ohio St., 77, [O. L. B. & R., 8-28-33].

(Wherever italics appear, they are by the writer of this opinion.)

These cases are relied upon by the defendant Fulton in his brief filed in this case and the defendant asks this court not to "fly in the face" of these decisions.

In the McDonald case the plaintiff, as administrator *de bonis non* of the estate of Emma C. Rumpf, successor to the Cummings Trust Company as such administrator, filed a petition alleging that the deposit was entitled to preference over general depositors. The court in its opinion says that the relationship established was that of *"debtor and creditor"* and that the rights to funds so deposited are no greater than nor different from other general depositors.

In the Gardiner case, *supra,* the court held that the relationship of *debtor and creditor* existed as to the fund on which a claim was made for preference and the court finds "no distinction between this case and the case of *McDonald* v. *Fulton, Supt. of Banks.*"

In the case of *Kuehnle Co.* v. *Fulton,* 45 Ohio App., 386, 39 O. L. R., 111, [O. L. B. & R., 10-30-33] the syllabus reads as follows:

"A deposit with a trust company as escrow agent *with stipulation for interest* after sixty days held not preferred claim on company's insolvency, where deposit remained with company over sixty days."

In this case a fund of $12,000 was deposited with the bank before liquidation as an escrow fund and with the provision that "said fund should bear interest at the rate of 4% per annum payable semi-annually in the event said fund should remain with the Security Home Trust Company for sixty days or longer." The fund remained in the bank for over fifteen months and the court held that the law as applied in the McDonald case "is none the less applicable to a contractual direction whereby the *parties themselves determine the character of the deposit and convert what otherwise would have been a trust relation into that of debtor and creditor.*"

All of the above cases were decided within the past two years and it is significant that the Legislature of this state has amended Section 710-165, General Code, effective June 14, 1933, giving moneys held in trust department by any trust company and deposited in any other department of the bank a preference over other claims. However this law can have no application here.

We come now to a consideration of the authorities in support of the contention of the plaintiffs that the transfer or withdrawal of the fund of $2,990 from the savings account of the plaintiffs, and its deposit in a fund designated by the bank as "Escrow Deposit Account," changed the relationship of "debtor and creditor," and that this change in the relationship gives the plaintiffs a preference.

Referring to the decisions cited by the plaintiffs in their brief we find an abundance of authority decided by the courts of other states to the effect that a deposit of money made for a specific purpose to be delivered to the other party upon the performance of certain conditions named in the escrow agreement, is entitled to a preference as against general creditors and the following cases seem to support the plaintiff's contention.

*Marine Bank* v. *Fulton Bank*, 69 U. S., 252; *Woodhouse, Admr.*, v. *Crandall, Receiver*, 197 Ill., 104; *Shoppert* v. *Indiana National Bank*, 41 Ind. App., 474; *Covey* v. *Cannon*, 104 Ark., 550; *Schulz* v. *Bank of Harrisonville*, Mo. App., 246 S. W., 614; *Blythe* v. *Kujawa, et al,* and *Skinner, Recr.*, 60 A. L. R., 330; *Kimmel* v. *Dickson, Recr.*, So. Dakota Sup. Ct., 25 L. R. A., 309.

In addition to the above cases reference will be made to the following cases decided by the courts of this state:

*Pontius, Supt. of Banks,* v. *Sears-Roebuck & Co.,* 16 Ohio App., 240; *Golf Land Co.* v. *Union Savings & Trust Co.,* 29 N. P., (N. S.), 375.

In the Pontius case, *supra,* the sum of $1,201.87 in money was deposited with the bank with the understanding that it was to be sent by the bank to Sears-Roebuck & Company when goods to be purchased by the depositor from the latter company was delivered to the depositor in conformance with certain specifications. While the money was still in the bank the superintendent of banks took possession of the assets for liquidation. Proof of claim was filed but was refused as a preferred claim. The first two paragraphs of the syllabus read as follows:

"1. Money deposited in a bank by a party, to be applied by the bank in payment of a specific indebtedness of the depositor to a third party upon the happening of a certain condition, creates a trust fund, and the bank as trustee is required to retain the fund in trust for the discharge of such indebtedness.

"2. The mingling by the bank of such a deposit with the money received from general deposits does not destroy the trust character of the money so received, and the *cestui que trust,* upon the happening of the condition, can recover the amount of the trust fund from the bank.

The court in its opinion quotes from the case of *Marine Bank* v. *Fulton,* 69 U. S., 252, as follows:

"All deposits made with bankers may be divided into two classes, namely, those in which the bank becomes *bailee of the depositor, the title to the thing deposited remaining with the latter;* and that other kind of deposit of money peculiar to banking business, in which the depositor, for his own convenience, *parts with the title to his money,* and loans it to the banker; and the latter, in consideration of the loan of the money and the right to use it for his own profit, agrees to refund the same amount, or any part thereof, on demand."

*Marine Bank* v. *Fulton Bank,* 69 U. S., 252, and 256.

"The first class of deposits is frequently divided again into special deposits and specific deposits or deposits for a specific purpose."

In the opinion of the Pontius case the court refers to many of the cases cited above as well as many additional cases in other jurisdictions which distinguish between the rights of *debtors and creditors* and those who make *a specific deposit* of funds for a specific and particular purpose.

In the case we are considering Giovanna Branciforti was not *a depositor* in the bank when it closed. That relationship ceased the moment the bank accepted the withdrawal order and transferred the sum from the savings account and deposited it in the "Escrow Deposit Account."

All of the cases cited seem to hold that there is a distinction between those cases where funds are deposited with the bank and the depositor parts with possession as well as title to his money and loans it to the banker who agrees to pay interest thereon, and that other class of cases known as special deposits for specific purposes where the possession of the money is parted with and while the depositor does not expect the return of the identical thing deposited, yet his *title thereto does not pass to the bank or to the other party until the conditions of the escrow agreements have been complied with.*

In the case of Golf Land Company, *supra,* funds were deposited with the bank to meet interest payments coming due under a mortgage of which the bank was trustee and in an action against the superintendent of banks who had taken charge of the assets for the purpose of liquidation the court held that the plaintiff had a preferred claim, relying mainly upon the case of *Marine Bank* v. *Fulton Bank,* 69 U. S., 252.

This latter case, *Marine Bank* v. *Fulton Bank,* which was decided by the Supreme Court of the United States in December, 1864, has been followed by a long line of decisions in many states, and distinguishes between those deposits in which the bank *becomes bailee of the depositor* and that other kind of deposit of money peculiar to banking business in which the depositor for his own convenience *parts with the title* to his money and loans it to the banker.

In this case of *Woodhouse* v. *Crandall, supra,* we find

that the mingling with other money of the sum of money left with the bank for a particular purpose does not cause the fund to lose its identity. The third paragraph of the syllabus is as follows:

"3. Trusts—*what does not destroy the identity of fund.* The fact that the original package of money constituting a trust fund is not kept intact or that the trust fund is placed with a larger sum of money in the bank does not destroy its identity, where enough money has always remained in the bank to satisfy the trust fund, since the law presumes the bank withdrew its own money first, rather than that it violated the trust and withdrew the trust fund."

In the opinion we find that

"It is the identity of the fund and not the identity of the money or currency which is to be established and that so long as it can be followed as a separate and independent fund distinguishable from any other funds, it can be pursued, and that if it can be shown the money is in a specified place equity will take out of that place enough money to satisfy the trust."

In the case of *Capital National Bank* v. *Coldwater National Bank,* 49 Neb., 786, we find the law stated in the syllabus as follows:

"A fund which comes into the possession of a bank with respect to which the bank has but a single duty to perform and that is to deliver it to the party thereto entitled, is a trust fund, and is therefore incapable of being commingled with the general assets of such bank subsequently transferred to its receiver."

The syllabus in the Blythe case, *supra,* is as follows:

"A fund left in a bank in escrow for the agreed specific purpose of being paid over to a third person upon completion of a land sale is a trust fund whether such fund is received by the bank in the form of money or a check or draft equivalent to money."

When the funds in this case were transferred and withdrawn from the account of the Brancifortis, and deposited in the "Escrow Deposit Account" it was for a specific and

definite purpose and no title in said fund passed to the bank and in turn to the liquidator such as would enable the superintendent of banks to transfer title to any portion thereof to the general creditors. If the plaintiffs instead of money had left in escrow with the bank stocks, bonds or other securities as the purchase price of the real estate, could it be claimed that the superintendent of banks, in taking possession of the assets and finding said securities held by the bank, had the right to hold said securities as general assets to be administered for the benefit of all the creditors? Or suppose we assume that instead of going to the bank the plaintiffs and the Ninety-eighth Realty Company had escrowed a like sum with an individual, said individual later becoming insolvent and making an assignment, would the money so found in the possession of the individual pass to the assignee as his property and in turn be distributed to his creditors? The mere statement of this proposition is sufficient to shock the conscience of a court of equity.

In the case of *Kimmel* v. *Dickson, supra,* a certain sum of money was paid over to a bank to be delivered to a third party when said third party should present to the bank a warranty deed properly executed, and the Supreme Court of South Dakota held that the money so deposited was a trust fund and did not become assets of the bank nor pass to the receiver as such, although the money when paid over to the bank was treated the same as any other deposit and mixed with the other money therein.

The court held:

"The bank could not afterwards without the acquiescence of Kimmel change its relation to him from that of *a bailee or trustee* to that of a *general debtor.*"

And

"Abuse of a trust can confer no rights on the party abusing it or on those claiming in privity with him."

The court held that the relation created was not that of a *debtor and creditor* but rather that of *principal and agent or bailor and bailee.*

The syllabus in the case of *Schulz* v. *Bank of Harrisonville, supra,* holds that:

"Where a bank has mingled a special deposit with its general funds the special depositor can follow the deposit into the funds of the assignee of the assets of the bank after its insolvency, since these assets were increased by the mingling of the funds to the amount of the special deposit."

In view of the overwhelming weight of authority referred to above, this court reaches the conclusion that a distinction must be made between those deposits where the relationship of debtor and creditor is created and such deposits as the one in this case, where the bank terminated the relationship of debtor and creditor in withdrawing the fund from the savings account and placed it to the credit of the "Escrow Deposit Account." In creating the "Escrow Deposit Account," the bank recognized the distinction between such a fund and general deposits and no title passed from the depositor until the conditions of the escrow were complied with, and plaintiffs are therefore entitled to a preference. The demurrer to the defendant's answer will be sustained. Exceptions may be noted.