The People of the State of Illinois ex rel. Oscar Nelson, Auditor of Public Accounts of the State of Illinois, Complainant, v. Citizens State Bank of Melrose Park et al., Defendants.

Appeal of Louis E. Nelson, Receiver, Appellant, v. Rose Fippinger et al., Intervening Petitioner, Appellees.

Gen. No. 37,366.

Heard in the first division of this court for the first district at the February term, 1934. Opinion filed April 2, 1934.

CROWE, GORMAN & SAVAGE, for appellant; G. W. WESSELINK, of counsel.

GUY C. GUERINE and PAUL W. BRUST, for appellees; GUY C. GUERINE, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

This is an appeal by the receiver from an order allowing Rose Fippinger and certain other intervening petitioners a preference as against all the assets of an insolvent bank now in the hands of a receiver.

The Citizens State Bank of Melrose Park, Illinois, was closed by the auditor of public accounts on October 24, 1930, and Louis E. Nelson was appointed receiver for the bank, which appointment was subsequently approved and confirmed by the circuit court.

July 31, 1933, the petitioner filed her intervening petition, in which various other persons joined, asking that they be allowed a preferred claim against all the assets of the bank because of a fraud practiced on them by the bank in the sale of certain real estate bonds to them; reference was had to a master who took evidence and reported in favor of the position of the petitioners.

The chancellor entered an order in accordance with the master's recommendations, finding that a trust had arisen in their favor by reason of the fraud and deceit

of the bank; that they had paid $11,400 to the bank, which funds were impressed with a trust which they were entitled to follow into the hands of the receiver, and the petitioners were given a preferred claim for this amount against all the assets of the bank.

The fraud upon petitioners is conceded by the appellant, the receiver. The bank had sold petitioners certain real estate bonds to the amount of $11,400, representing that they were first mortgage bonds, whereas in fact there was a prior mortgage of $6,500 on the property securing the bond issue.

In the brief for the receiver counsel states that he is not objecting to the order entered by the court in so far as it finds that a constructive trust arose in favor of the petitioners as a result of the acts of the bank. The receiver asserts, however, that the fund or *res* of the constructive trust has not been traced into the assets of the bank either in its original or substituted form, and therefore the trust can be imposed only on the cash assets of the bank on the date of its closing, in which petitioners may share equally with all other creditors of a like class and rating.

The bonds sold to petitioners were dated March 23, 1929, and the money received from their sale was placed in the assets of the bank. The assistant cashier testified that in 1929, and until October, 1930, the bank bought stocks and bonds and made some mortgages; that to the best of the witness' recollection the amount of money invested by the bank in mortgages, stocks and bonds in 1930 was at least $250,000, and that some of the mortgages were still in the assets of the bank at the time it closed; the witness did not know what stocks and bonds were purchased nor what mortgages were made; witness also testified that at the time of the closing of the bank the book value of its assets was a little over $1,000,000, and the actual cash on hand and

money due from other banks on this date was approximately $9,800.

The earlier cases seem to hold that petitioners, under such circumstances, would have been required to identify the property sought to be impressed as the very property they had confided to the bank. The more modern doctrine holds that a constructive trust will attach to successive substitutions so long as they can be identified as the product, either as a whole or in part, of the original trust fund, the superior rights of others not intervening.

In the very recent case of *People v. Peoples State Bank of Maywood,* 354 Ill. 519, the court said: ''Since the right to reclaim a trust fund is founded on the right of property, and not on the ground of compensation for its loss, the beneficiary must be able to point out the particular property into which the fund has been converted. When he is unable to do so, the trust fails and his claim becomes one for compensation only and stands on the same basis as the claims of general creditors. It is as necessary to trace the proceeds of a check or draft constituting part of a trust fund, as it is to trace the proceeds of any other species of personal property; and a trust fund traced into a bank account, if its identity can be established, and no superior rights of innocent parties have intervened, will be held for the benefit of the *cestui que trust.* The question in every case where it is sought to trace trust property is whether it can be identified in its original or altered form.''

It follows, therefore, that the receiver in the instant case in whose bank is a fund impressed with a trust, cannot be required to repay it in preference to the claims of general creditors unless the trust fund can be identified or traced into some other specific fund or property. In the very recent case of *People ex rel. Nelson v. First State Bank of Barrington,* 274 Ill. App.

46, consideration was given to the question of the duty of one seeking a preferential claim to identify the fund upon which he seeks to impress a trust. We there quoted with approval from *Slater v. Oriental Mills,* 18 R. I. 352, where the court said in substance that while one who has been wronged may follow and take his own property, or its visible product, it is quite a different thing to say that he may take the property of somebody else.

The evidence in the instant case shows that the money received from petitioners was mingled with the general funds of the bank; the particular money paid by them was not traced into any specific property; investments approximating $250,000 were made by the bank in the year 1930, and some of these were still in the assets of the bank when it closed. There is no showing that all or any part of petitioners' money was used to purchase any of these investments. Formerly when the trust money was mixed with the money of the trustee, the beneficiary was compelled to stand as a mere unsecured creditor. This was because of the fact that money was not earmarked, and for that reason could not be recovered in species. The later cases have ruled that in case of blended moneys in a bank account, reduced by withdrawals from time to time, it will be presumed that the sums withdrawn were from moneys which the trustee had the right to withdraw, and that the balance left includes the trust fund he has no right to use. *People v. Dahlgren State Bank,* 264 Ill. App. 513; *People v. Iuka State Bank,* 229 Ill. App. 4.

In *Woodhouse v. Crandall,* 197 Ill. 104, it was held that where money impressed with a trust has been placed in the vaults of a bank the law presumes that the trustees drew out their own money first and what remained belonged to the trust; and in *People v. Peoples State Bank of Maywood, supra,* this rule was

enforced, the court saying that if there is a balance less than the trust money the fund must be regarded as dissipated except as to this balance.

In the present case there is no showing that the general cash fund of the bank was not dissipated at some time after the deposit of petitioners' money. The cash assets of the bank on the date it closed, which was approximately 15 months after the receipt of petitioners' money by the bank, were about $9,800, which is less than the amount of the claims, $11,400, allowed to petitioners. Petitioners' right to recover is therefore limited to the cash assets of the bank on the date it closed, and in this fund they can have no more than a pro rata share along with other preferred creditors.

The order of the chancellor entered October 30, 1933, adjudging that the petitioners should have a preferred claim against all the assets of the bank and as against its general creditors, is reversed and the cause is remanded with instructions that an order be entered that petitioners be allowed a preferred claim as to the cash assets of the bank on the date of its closing, along with all other creditors of a like class.

*Reversed and remanded with directions.*

MATCHETT, P. J., and O'CONNOR, J., concur.