TERRE HAUTE TRUST COMPANY ET AL. *v.* SCOTT, RECEIVER.

[No. 14,145. Filed June 3, 1932.]

462

C. A. *Royse,* for appellants.
*James Douglas,* for appellee.

Wood, C. J.—Appellants filed an intervening petition against appellee in the receivership proceedings of the Clinton Trust Company, seeking the allowance of a claim asserted by them against the trust company as a preferred claim, also seeking to have certain assets of said trust company which passed into the hands of the appellee as such receiver impressed with such preference. Appellee filed objections to the allowance of appellant's claim as a preferred claim. Trial was had upon the issues thus tendered, resulting in a judgment allowing the claim as a general claim and denying it preference. Motion for a new trial was overruled and this appeal followed. Appellants assign as errors for reversal the overruling of their motion for a new trial, and in various methods the refusal of the court to allow their claim as a preferred claim.

The facts are undisputed; they were stipulated between the parties in the following language: "1. That on, to wit, the 18th day of October, 1916, said Clinton Trust Company became the trustee of an express trust for the use and benefit of one Charles Whitcomb and said Ren W. Allen, created as follows: That one Lydia A. P. Whitcomb, prior to said date, was the owner of a certain tract of real estate in Vermillion County, Indiana, described as follows: (describing it).

"That in consideration of $3,000.00 paid to her by said Charles Whitcomb and Ren W. Allen said Lydia A. P. Whitcomb, a widow, conveyed said land to the Clinton

Trust Company, as trustee, for the use and benefit of said Charles Whitcomb and Ren W. Allen, by a deed dated October 18, 1916, and recorded in the Recorder's office of Vermillion County, Indiana, in deed record 59, page 396, with power to plat said land into lots and sell and convey same on contract or otherwise and collect the purchase money thereof, the net proceeds to be paid to said Whitcomb and Allen.

"2. That a plat of said property was duly made and filed for record, known as North Modoc Park Place; that said trustee proceeded to sell said lots on contracts and collect the purchase price thereof and from time to time made settlement with said beneficiaries.

"3. That said Charles Whitcomb died on the 1st day of February, 1917, a resident of Vigo County, Indiana, leaving a last will whereby he devised and bequeathed all the residue of his estate to the Terre Haute Trust Company as trustee on certain trusts therein specified; that said will was duly probated in the Circuit Court of Vigo County, Indiana, on February 7, 1917, and the Terre Haute Trust Company was duly qualified as executor of said will, and also as trustee thereunder, and is now the duly qualified and acting trustee under said will. That the residue of said estate of Charles Whitcomb and said trust fund included all property belonging to said Charles Whitcomb located in Vermillion County, Indiana, and included his equitable interest in the above-named trust held by the Clinton Trust Company, trustee; and the Terre Haute Trust Company, as such trustee, is now the beneficial owner of all the interest in said North Modoc Park Place formerly vested in said Charles Whitcomb and said the Terre Haute Trust Company, as trustee, and Ren W. Allen are now the beneficiaries of said trust.

"4. That prior to the appointment of the Receiver herein said Clinton Trust Company, trustee, sold and

conveyed to various purchasers the real estate included in said trust and made final collection of the purchase money from all of said property; that said sums were collected and received by said trustee at various times and from various purchasers and over a period of several years, and prior to the appointment of the Receiver herein said trust fund was in part distributed to said beneficiaries, but not in equal amounts; that at the time said Clinton Trust Company became insolvent and was closed by the Bank Commissioner of the State of Indiana and the Receiver herein was appointed said Clinton Trust Company held in said trust fund the sum of $1,506.58 as trustee for said beneficiaries; that of said sum the Terre Haute Trust Company, as such trustee, was the equitable owner of and entitled to the sum of $1,365.79, and said Ren W. Allen was the equitable owner of and entitled to the sum of $140.79, and all the proceeds of said trust property so held by the Clinton Trust Company, trustee, were collected and held by said Clinton Trust Company in a fiduciary capacity only and as trustee as aforesaid. That said sums have heretofore been allowed as general unpreferred claims.

"5. That all sums so collected by said trustee, when received, were mingled with and held in the general cash resources of said trust company and kept in the general cash fund of said Clinton Trust Company.

"6. That the Clinton Trust Company during all of its existence engaged extensively and generally in the business of receiving deposits of money, checks or drafts from its patrons and paying out money on checks drawn upon it by its patrons against such deposit accounts, and further acted generally in a fiduciary capacity as trustee, receiver, executor, administrator and guardian of estates, and received funds in such fiduciary capacity, and paid out same by checks; that all such trust funds

when received were commingled with other funds in said Clinton Trust Company, and not kept separate.

"7. That said Clinton Trust Company kept its accounts on loose sheets kept in certain files and posted by machine; that the account of said trust was kept and carried under the name of the Clinton Trust Company, trustee of North Modoc Park Place, and the accounting sheet showing the account of said trust was kept and carried in the file containing general commercial deposit accounts, and moneys paid out by said trustee were paid on checks drawn by said trustee on the Clinton Trust Company and charged to said account, and in addition vouchers were taken for the payments.

"8. That at the time said Clinton Trust Company became insolvent and the Receiver herein was appointed it had on hand in its vaults cash in the amount of $5,524.63, and had cash on deposit to its credit in other solvent banks and trust companies in the amount of $6,145.74, making total cash resources at that time of cash on hand and due from banks of $11,670.37. That said funds, together with other assets of said Clinton Trust Company, came to the hands of said Receiver. That at all times prior to the appointment of the Receiver herein the cash resources of said Clinton Trust Company was in excess of the amount on hand at the date of insolvency and in excess of the trust funds belonging to said Whitcomb and Allen, and also all other trust funds of the same class.

"9. That certain claims have heretofore been allowed in said receivership as preferred claims as follows: Claim of Ferguson Coal Company on account of a collection made for and in behalf of said claimant in the sum of $422.76, claim of Samuel Johnson, on account of money held in escrow by said Clinton Trust Company for said claimant in the amount of $1,550.00, and claims of various persons on account of bond coupons held by

said Clinton Trust Company for collection in the aggregate sum of $663.39, making a total of preferred claims heretofore allowed in the sum of $2,636.14.

"Further, at the time the Receiver was appointed herein, said Clinton Trust Company was trustee of other express trusts and guardianships and there was due and payable to the beneficiaries of said several trusts the sum of $2,391.63, and in addition thereto there was due and payable to the Terre Haute Trust Company, as trustee, and said Ren W. Allen, as heretofore found, the sum of $1,506.58, making the total amount of trust funds held by said Clinton Trust Company the sum of $6,534.35."

The sole question in this case, submitted for consideration, is whether or not under the facts (all of which were stipulated, as above set out), the appellants are entitled to have their claim against the Clinton Trust Company allowed as a preferred claim.

No relation, guarded with more care and circumspection, is recognized by the law than that of trustee and *cestui que trust.* As the words themselves imply, it involves the exercise of trust, confidence and utmost good faith upon the part of the trustee for the benefit and furtherance of the interest of the beneficiary under the trust. Whether the trustee be a corporation or an individual, the same rules must of necessity apply. The abuse of the trust can confer no rights on the trustee abusing it or on those claiming privity with him. Neither can he voluntarily or at his option without the consent of the beneficiary repudiate the trust, to the disadvantage or injury of such beneficiary. *Kimmel* v. *Dickson* (1894), 5 S. D. 221, 58 N. W. 561, 25 L. R. A. 309, 49 Am. St. 869.

The receiver took the assets of the trust company subject to all legal and equitable claims of others. *Lamb, Rec.,* v. *Morris* (1888), 118 Ind. 179, 20 N. E. 746, 4 L. R. A. 111; *Shopert* v. *Indiana Nat. Bank* (1907), 41 Ind.

App. 474, 83 N. E. 515; *Crowder* v. *Story* (1929), 90 Ind. App. 598, 169 N. E. 470.

While the first impression created by a reading and investigation of the reported cases similar to the one at bar is that they are in hopeless and irreconcilable confusion and conflict, the authorities and editorial writers on the subject have been able to gather from them certain controlling principles of law on which they seem to be in accord. Most of the cases have facts peculiar to themselves, and undoubtedly much of the apparent conflict arises from the method adopted by the different courts in the application of these rules of law to the facts in the case there under consideration. Our courts have adopted the rule that a trust fund may be followed and recovered even though it may have lost its original form or character, and the beneficiary may pursue and reclaim it so long as identification is possible, unless it has passed into the hands of a *bona fide* purchaser without notice. If the fund consists of money, "identification does not require that the identical bills or coins be discovered, but the ascertainment of the fund into which it has entered and lodged is sufficient." *Shopert* v. *Indiana Nat. Bank* (1908), 41 Ind. App. 474, 83 N. E. 515; *Pearce* v. *Dill* (1897), 149 Ind. 136, 48 N. E. 788; *Porter* v. *Roseman* (1905), 165 Ind. 255, 74 N. E. 1105, 112 Am. St. 222, 6 Ann. Cas. 718; *Windstanley* v. *Second Nat. Bank* (1895), 13 Ind. App. 544, 41 N. E. 956; *Continental Nat. Bank* v. *McClure* (1915), 60 Ind. App. 553, 111 N. E. 191; *State, ex rel.,* v. *Farmers, etc., Bank* (1919), 71 Ind. App. 216, 124 N. E. 501; *Reserve, etc., Co.* v. *Dulin* (1922), 82 Ind. App. 630, 135 N. E. 590; *Stult* v. *Gordon* (1929), 89 Ind. App. 611, 167 N. E. 564.

It was formerly the rule that, when a trustee commingled trust money with his own, inasmuch as money has no ear marks, when so commingled the whole be-

came an indistinguishable mass and the means of ascertainment failed. "But equity, adapting itself to the exigencies of such conditions, finally determined that the whole mass of money with which the trust funds were commingled should be treated as a trust." Thus adopting the rule announced in the leading English case of *Knatchbull* v. *Hallett* (1879), L. R. 13 Ch. Div. (Eng.) 696. See *Windstanley* v. *Second Nat. Bank, supra; Reserve, etc., Co.* v. *Dulin, supra; Federal Reserve Bank* v. *Peters, Rec.* (1924), 139 Va. 45, 123 S. E. 379, 42 A. L. R. 742; 3 Pomeroy, Equity Jurisprudence (4th ed.) pp. 2387 and 2388.

As adopted by our Supreme Court: "The rule is, when the right to pursue and reclaim a trust fund exists, that the true owner thereof, when the fund is traced to the possession of another and identified, has the right to have it restored to him, *not as a debt due and owing to him, but for the reason that it is his property, wrongfully divested and withheld*: and it can make no difference in regard to the right of recovery in such case, whether the fund has been traced into the possession of a single individual, or into the hands of a firm or association composed of many persons, *or into the form of a bank account.*" (Our italics.) *Pearce* v. *Dill, supra,* and authorities cited. *Crowder* v. *Story, supra.*

When the trustee commingles the funds of his *cestui que trust* with his own funds and thereafter pays his own obligations from the funds thus commingled, the law presumes that he intended to and did act with an honest purpose; that the money thus paid out by him from the fund was his own money, and any balance remaining in the fund equal to the amount held in trust belongs to the trust estate. *City of Lincoln* v. *Morrison* (1902), 64 Nebr. 822, 90 N. W. 905, 57 L. R. A. 885; *Leach* v. *Farmers, etc., Bank* (1927), 205 Iowa 114, 213 N. W. 414, 217 N. W. 437, 56 A. L. R. 801; 26

R. C. L. p. 1354, §218; *Allen & Steen Acceptance Co.* v. *Cook, Rec.* (1930), 93 Ind. App. 683, 173 N. E. 460.

The rule announced by the federal courts and approved by our courts is that "proof that the tort-feasor had mingled the trust funds with his own and made payments thereafter out of the common fund, is, nothing else appearing, a sufficient identification of the remainder of that fund coming into the hands of the receiver, not exceeding the smallest amount the fund contained subsequent to the commingling, as trust property, under the legal presumption that he regarded the law and neither paid out the trust fund nor invested it in other property, but kept it sacred." *Brennan* v. *Tillinghast* (1913), 201 Fed. 609; *Fletcher, etc., Trust Co.* v. *American State Bank* (1925), 196 Ind. 118, 147 N. E. 524; *Crowder, Rec.,* v. *Abbott* (1931), 203 Ind. 59, 178 N. E. 860; *Windstanley* v. *Second Nat. Bank, supra; Shopert* v. *Indiana Nat. Bank, supra; Crowder* v. *Story, supra; Mock* v. *Stultz* (1932), 179 N. E. Ind. App. 561.

The trust company acting in the capacity of trustee was necessarily required to keep a record and account of the cash transactions in connection with the trust; the method of keeping this record could not in any way jeopardize the rights of the beneficiary under the trust. *Woodhouse* v. *Crandall* (1902), 197 Ill. 104, 64 N. E. 292, 58 L. R. A. 385; *Hudspeth* v. *Union, etc., Bank* (1923), 196 Iowa 706, 195 N. W. 378, 31 A. L. R. 467; *Leach* v. *Farmers, etc., Bank, supra; Shopert* v. *Indiana Nat. Bank, supra.*

In support of the judgment of the trial court, appellee contends that, under the law of Indiana, a trust company can receive money in the capacity of trustee, and thereafter deposit and commingle the same money with the general cash money in its banking department as a bank, thus establishing the relation between itself as trustee and itself as a bank, of debtor and creditor,

so that in case of the insolvency of the trust company, it would, as such trustee, by its own conduct, have placed itself in such a position that it would only stand in the relation of a general creditor to its own insolvent banking institution, and thus deprive the beneficiaries under the trust of any preference against the assets of the trust company. In other words, that the same relation exists between the trust and banking department of the trust company as would exist between it and some other entirely separate and independent bank, if the deposit had been made in such other bank. In support of this contention, counsel for appellee cites and relies upon the case of *Wainwright Trust Co.* v. *Dulin* (1918), 67 Ind. App. 476, 119 N. E. 387. This case does lend some support to appellee's contention, but the facts and issues presented to the court in that case were, like those in all cases of this character, peculiar to itself. Although that case was decided by a divided court, a correct result was probably reached, though we are not able to give our whole hearted approval to the reasoning adopted, and feel that the principles announced in the case should not be extended beyond the facts and circumstances there involved, nor do we feel that it is of controlling influence in the instant case.

The facts and issues involved in the *Wainwright Case* and this case are in some respects markedly different. An express trust existed between the Clinton Trust Company and appellants. All of the proceeds of the sale of the trust property held by the trust company were collected and held by it only in a fiduciary capacity, and as trustee, so all sums so received by it were impressed with a trust, for the use and benefit of appellants. The trust company during its entire existence did a general banking business and, upon receipt of the funds from this trust, commingled them with its general funds. This was done without consent of appellants.

The account of the fund was kept by the trust company on the same kind of sheets, posted and checks drawn against it, in the name of the trustee, in the same manner as other commercial deposit accounts. In addition to the checks, vouchers were taken from the beneficiaries for payments. When the Clinton Trust Company became insolvent and the receiver was appointed, it had $11,670.37 total cash resources on hand, which, together with other assets, went into the hands of the receiver. In the Wainwright case only $300 in cash was on hand and taken possession of by the receiver. When the Clinton Trust Company became insolvent it, as trustee for appellant, held in the trust fund the sum of $1,506.58, and at all times prior to the appointment of the receiver the cash resources of the trust company were in excess of the amount on hand on the date of insolvency, and in excess of the trust funds belonging to appellants and other beneficiaries of the same class. This was not so in the *Wainwright Case.* The total amount of trust funds held by the Clinton Trust Company when it became insolvent was $6,534.55, while in the *Wainwright Case* the funds so held amounted to about $9,000, and in that case the total amount of checks drawn against and paid out of the general fund, after the deposit of the trust funds, greatly exceeded the amount of money in the general fund at any one time. Interest was paid in the *Wainwright Case;* in this case no interest was paid. The cash assets of the bank in the *Wainwright Case* were wholly dissipated with the exception of the small sum of $300 which passed into the receiver's hands, no portion of that could have been made up of the guardianship's funds for the general fund into which it had been placed had been exhausted and paid out. There were no facts to show that the fund had

remained in the vaults of the trust company at all times, that it augmented the cash or other resources of the trust company and came into the hands of the receiver.

In the instant case the funds impressed with a trust were deposited by the officers of the trust company in its banking department, presided over by the same officers who, of course, received them with full knowledge of the existing trust, during the entire time after receiving these funds and commingling them with the general cash assets of the trust company, up to the time of its insolvency and appointment of the receiver, it had on hand cash assets sufficient to pay this trust fund and all others of its class. This fund passed into the hands of the receiver and to that extent augmented the assets of the trust company.

As heretofore suggested, the law determining the duties and responsibilities of a trustee to the *cestui que trust* apply without distinction, whether the trustee be a private individual or a corporation, and no statute in our state has been called to the attention of the court granting any special immunities or privileges to a trust company acting in that capacity. · No reason occurs to us why a trust company should be permitted to assume the functions and important duties of trustee on one side of the counter, and repudiate that relationship to the disadvantage of the beneficiary by depositing funds which it may thus receive in its own bank on the other side of the counter, and in case of insolvency estop the beneficiary from tracing the trust funds into the vaults of the trust company as a bank, any more than a private person could do.

In support of this last observation, we cite *Indiana Trust Co.* v. *Griffith* (1911), 176 Ind. 643, 95 N. E. 573, 44 L. R. A. (N. S.) 896, Ann. Cas. 1914a 1023; *St. Paul Trust Co.* v. *Strong* (1901), 85 Minn. 1, 88

N. W. 256; *Genesee, etc., Seminary* v. *United States, etc., Co.* (1928), 247 N. Y. 52, 159 N. E. 720, 56 A. L. R. 964; *Sears, Trust Company Law* §31, p. 60.

In the case of *Indiana Trust Co.* v. *Griffith, supra,* the facts briefly were these: The trust company was the guardian of Griffith, in the administering of the trust; the company, without having first filed a petition with and obtaining an order of the court authorizing the investment, invested some of the trust funds in certain stocks. Upon filing a report of its administration of the guardianship, the ward through a next friend filed objections to the approval of the report because of the investments and asked that the trust company be required to account to the estate for the moneys so invested with interest thereon. The court held the objections sufficient to entitle the ward to relief. The trust company sought to justify its conduct under the authority of clause 6 of §3950 Burns 1926, formerly §4953 Burns 1908. The court, after announcing the general rules prevailing in the management and administration of guardianships, discussing the purpose and intent of the Legislature in the enactment of clause 6 of the above statute, said: "The rule as it existed at the time of this enactment must have been in the mind of the lawmaking power. Under it, guardians and other trustees possessed certain discretionary duties with regard to the control over and investment of the trust funds. An exercise of the discretion without submission to the supervisory direction of the court having jurisdiction was at the risk of the guardian or other trustee, if loss occurred, while an exercise of the discretion under the approval and direction of the court absolved from loss. As we see it, clause six of §4953, *supra,* does nothing more than declare that the same rule shall also apply to the companies brought into life by the statute and authorized to act as guard-

ian when acting in such a trust capacity by appointment; in short, it applies the same measure of duty and responsibility to trust companies acting in a trust capacity as to a private person so acting. A contrary intent is not disclosed by the provisions of the statute. Said clause does not declare that there shall be no liability when such a company acts solely and independently on the discretion granted to it. It does expressly declare that there shall be none, if its action is taken upon the specific direction of the court.

"Moreover, statutes are to be so construed as to sustain their constitutionality, rather than to place upon them a construction that would render them invalid. (Citing authorities.)

"The construction of clause six contended for by appellant might well cast doubt on its validity. *It would place natural persons acting as guardians, or in other trust capacities, in a class on which the law imposed narrower powers and a greater liability than these corporations, while acting in exactly the same fiduciary relation.* (Our italics.) Whether this can be done without a violation of constitutional limitations may well be doubted.

"It must follow that the investment of the trust funds by appellant guardian, without authority of court, was, under the rule existing in this state, and generally in other states, an abuse of its discretionary control of its trust. Manifestly to give the statute the meaning contended for by appellant, would place trust funds at the mercy of guardians. The rule that there must be the directive order of court to work absolution to the guardian for loss is a wholesome one in this day of promotion, exploitation and the underwriting of the obligations of industrial enterprises."

In the case of *St. Paul Trust Co.* v. *Strong, supra,* the trust company was acting as trustee under the will

of one, Charles D. Strong. During the administration of the trust, the company with funds which it held as trustee, without an order of court or consent of the beneficiaries, purchased from its banking department, certain notes and mortgages which were assigned by its banking department to itself as trustee of the trust. The basis upon which the trial court sustained the objections of the beneficiaries to the investments were: "First, that in every instance the company had converted the trust funds to its own use immediately upon receiving the same, and therefore could not subsequently make any investments whatsoever as a trustee which would bind the beneficiaries; second, that, as the notes and mortgages were owned by the company itself, it could not transfer the same to itself as trustee without an order of the court or the consent of the beneficiaries, because its self-interest would come in direct antagonism with its duty, the inevitable result being, it is contended, that all transactions made under such circumstances are voidable at the election of the beneficiaries." The trust company in this case, as in the Indiana case, attempted to justify its conduct under a provision of their statute which is exactly the same as clause 6 of our statute discussed by our Supreme Court in *Indiana Trust Co.* v. *Griffith, supra.* In considering the case and disposing of the contention of the trust company, the Minnesota Supreme Court cited and quoted with approval from *Michoud* v. *Girod* (1846), 4 How. (U. S.) 503, 11 L. Ed. 1076, the following language: " 'The general rule stands upon our great moral obligation to refrain from placing ourselves in relations which ordinarily excite a conflict between self-interest and integrity. It restrains all agents, public and private; but the value of the prohibition is most felt, and its application is more frequent, in the private relations in which the vendor and purchaser may stand

towards each other. The disability to purchase is a consequence of that relation between them which imposes on the one a duty to protect the interest of the other, from the faithful discharge of which duty his own personal interest may withdraw him. In this conflict of interest, the law wisely interposes. It acts not on the possibility, that, in some cases, the sense of that duty may prevail over the motives of self-interest, but it provides against the probability in many cases, and the danger in all cases, that the dictates of self-interest will exercise a predominant influence, and supersede that of duty. It therefore prohibits a party from purchasing on his own account that which his duty or trust requires him to sell on account of another, and from purchasing on account of another that which he sells on his own account. In effect, he is not allowed to unite the two opposite characters of buyer and seller, because his interests, when he is the seller or buyer on his own account, are directly conflicting with those of the person on whose account he buys or sells.

" 'A trustee cannot legally purchase on his own account that which his duty or trust requires him to sell on account of another, nor purchase on account of another that which he sells on his own account. He is not allowed to unite the two opposite characters of buyer and seller.' "

Then the court commenting upon the legal effect of their statute said: "The company offered to show at the trial that the investments made in this instance were such as the company was authorized to make under the law, and fully complied with the requirements found in section 2844; and, for the purpose of this opinion, we assume this to be the fact, and also, as believed by the trial court, that the company exercised good faith in each of these transactions, and acted with a conviction that it was complying strictly with the law in re-

spect to investments of the trust funds. This clearly appears, but the transactions are not to be tested in this way unless the statute has abrogated the rule; for, in any given case where there was no statute, it might easily and conclusively be made to appear that the security was abundant, taken in strict accordance with what are now the statutory requirements, and that the trustee acted in good faith, and with a belief that he was justified in the law in all respects. The real inquiry is, can the statute be construed as setting aside the rule, and as substituting therefor a radically different method in respect to trust investments?

"It is hardly necessary to say that no absolutely radical departure from a thoroughly established doctrine ought to be made without very cogent reasons, surely not by an inference that a change was intended by the enactment of a statute."

Then, after enumerating and discussing some of the hazards and dangers that might be encountered in the management of trust estates if the position of the trust company was to be adopted, in the construction of the statute, the court concluded this portion of its opinion with this statement: "The fact is that the various restrictions and obligations which the statutes imposed and cast upon these companies were introduced to safeguard and protect their patrons, and were not designed for the benefit or advantage of the organizations therein provided for. There was no intention to set aside well-settled rules for the conduct of private trustees, but, upon the other hand, it was the object and purpose to insure a rigid observance of such rules by statutory restrictions and regulations. The design of this legislation was to promote and insure strict business principles in the management of those companies, and thus to protect the people. It was not intended to open the

way to practices which might result disastrously to those whose pecuniary interests were in their keeping."

As very much in point here, keeping in mind the fact that the rules of law governing trustees apply alike to individuals and corporations acting in that capacity, we quote from Chief Justice Cardoza, who delivered the opinion of the court in the case of *Genesee, etc., Seminary* v. *United States, etc., Co., supra,* as follows: "The question remains as to the terms, express or implied, upon which deposits were received. We think the evidence supports the finding that they were received, not as loans, but as a fund burdened with a trust. The Bank of Honeoye Falls was not a corporation. It was not even a partnership. It was Holden under another name. When moneys belonging to the Seminary were paid to Holden, treasurer, they became subject on the instant, as he took them, to a trust imposed by law. No one would doubt this if in the moment of the taking he had spent them for himself, without the form of a credit for the account of his depositor. They were not freed from the trust because he left them in his counting house where he wore the title banker. He was the same person, bearing the same relation to those who had put faith in him. His duties were not changed any more than they would have been if he had collected the money with his right hand and turned it over to his left. The Seminary might consent, if so it pleased, that its treasurer should cease to be a fiduciary, and become a borrower and owner. Something more should be proved to effect that transformation than a deposit of the moneys upon the counter of his 'bank.' A trust imposed by law is not to be divested at the instant of its creation, and silently, as if by sleight of hand, converted into a loan. The presumption is a strong one that a fiduciary is not to deal for his own profit with

the moneys of a trust, expending and even wasting at his own uncensored pleasure. If consent so sweeping is intended, there must be more than the naked fact of a deposit to bespeak the understanding. To say that a treasurer is free to use as his own the funds committed to his care is to say that a bond, securing his fidelity, and kept alive through annual premiums, is in truth an idle form. Business, seriously conducted, becomes a mere vagary."

In the case at bar, the agreed stipulation of facts shows that the funds of appellants were received by the Clinton Trust Company as trust funds under an express trust; that at the time of the insolvency and closing of the trust company, the cash assets of said company amounted to the sum of $11,670.37, and were sufficient to pay the claim of appellants and all other claims in its class; that during the entire time after the depositing of the funds of appellants in said trust company, up to the time of its insolvency and closing, it had sufficient funds on hand with which to pay appellants' claim; that said funds passed into the possession of appellee receiver and augmented the cash assets of said trust company to that extent. It follows, therefore, that, under the rules of law above summarized, and the reasoning of the authorities cited in support thereof, the trial court erred in overruling appellant's motion for a new trial.

The judgment is reversed, with instructions to sustain appellants' motion for a new trial, and to render judgment in their favor, on the facts as stipulated, not inconsistent with this opinion.