## ROTTGER, RECEIVER *v.* DELTA DELTA DELTA REALTY CORPORATION ET AL.

[No. 14,503.   Filed February 17, 1933.   Rehearing denied May 19, 1933.   Transfer denied May 24, 1934.]

*Joseph Collier* and *Henry M. Dowling*, for appellant.

*Fredrick E. Matson, James A. Ross, Robert D. Mc-Cord, Austing V. Clifford, Adolph Schreiber,* and *Harry T. Ice,* for appellees.

*Mahlon E. Bash and Wiles, Springer & Roots,* amicus curiae.

WOOD, J.—The City Trust Company was adjudged an insolvent by the Marion Circuit Court on November 17, 1930. Curtis H. Rottger was thereafter appointed receiver, to administer upon and wind up the affairs of the insolvent. On February 19, 1931, after having first obtained leave of court, the appellees filed an intervening petition in two paragraphs in the receivership proceedings, seeking an order of the court for the allowance and payment of a certain claim against the City Trust Company in the sum of $8,043.18 as a preferred claim. The issues were closed by the filing of an answer in general denial by appellant. The cause was submitted to the court for trial upon the issues thus tendered, resulting in the rendition of a judgment allowing appellee's claim for the above amount and ordering it paid as a preferred claim. Appellant filed a motion for a new trial, the only causes contained therein necessary for our consideration being: (1) the finding and decision of the court are not sustained by sufficient evidence; (2) the finding and decision of the court are contrary to law. This motion was overruled. Appellant appeals, assigning as the only error for reversal the overruling of his motion for a new trial.

Appellees have filed a motion to dismiss this appeal, on the theory that the receiver is a disinterested party, is a mere officer of the court, has no discretion in the distribution of the funds in his hands between appellees and other creditors, thus he cannot question the correctness of the order allowing

their claim as preferred, and that authority to appeal granted by the lower court, would not vest in the receiver, the right, unless he had it in the first instance. On the authority of *Rottger* v. *First-Merchants National Bank of Lafayette* (1933), ante 139, 184 N. E. 267, and the authorities therein cited the motion to dismiss is overruled.

The facts are not in controversy between the parties, Delta Omicron Chapter of Delta Delta Delta, sorority of Bloomington, Indiana, was desirous of erecting a chapter house in that city. On May 31, 1930, for the purpose of financing the enterprise, Delta Omicron Chapter as the first party, City Securities Corporation as the second party, City Trust Company as the third party, and Delta Delta Delta Realty Corporation as the fourth party entered into a written contract designated by the parties as "Underwriting Agreement Delta Delta Delta Realty Corporation Preferred Stock." This is a long and involved document. For the purpose of this opinion we will set out the substance of only such portions thereof as are necessary for consideration and over the legal effect of which the parties disagree. The first party to the contract agreed to have the fourth party to the contract incorporated under the laws of the state of Indiana, with an authorized capital stock, consisting of 1000 shares of common stock of no par value, and 450 shares of six per cent, cumulative preferred stock having a par value of $100 each. The fourth party was accordingly organized and its stock as above provided issued. The second party was to and did purchase the entire issue of preferred stock for the price of $92 per share. The third party, City Trust Company, was designated as registrar and transfer agent for all of fourth party's stock, both common and preferred, and to receive the sum of $45 for such services payable in advance and quoting: "All cash proceeds derived from

the sale of fourth party's stock shall be deposited with the third party in trust on special deposit and shall be withdrawn only on checks countersigned by a representative of the third party and in payment of the cost of fourth party's new building upon architect's estimates furnished in the usual form. The third party shall, however, have the right to pay out of said construction fund any cost and expenses incurred in the organization of the fourth party not met promptly by the first party, in order that the fourth party may at all times be kept free from floating indebtedness," and quoting further, "The third party agrees to allow two per cent (2%) interest per annum on daily balances in the construction fund, computed monthly." The third party, City Trust Company, was also to act as sinking fund trustee for the purpose of receiving and applying the funds set apart by the fourth party for the payment of dividends and redemption of preferred stock. It was further provided that, "Such sinking fund shall be held by the third party in trust on special deposit and shall be withdrawn only for the purpose of paying dividends on and redeeming the preferred stock at the respective times fixed therefor, except, however, that said fund may be drawn on by the third party for the purpose of paying the fee of the third party herein provided for, or to repay any advancements made by it or the holders of the preferred stock for the benefit of the fourth party. On balance remaining in such sinking fund the third party shall allow interest at the rate of three per cent (3%) per annum, computed in accordance with the rules of its savings department." To better secure the interest of fourth party's preferred stockholders, the first and fourth parties were to cause to be executed and delivered to third party proxies covering both the common and preferred stock, outstanding, with power to vote the common stock at all stockholders meetings,

and quoting: "It is agreed that the third party hereto is acting as the representative of the fourth party's preferred stockholders and may, in its discretion, do and perform, or cause to be done and performed all matters and things contemplated hereby, including the right to make advancements for the protection of the preferred stockholders of the fourth party and their interests in the property of the fourth party, and the third party shall have the right to reimburse itself from any funds of the fourth party coming into its possession for any and all advancements made, together with interest thereon at the rate of eight per cent (8%) per annum."

It was also provided that the improvements erected should be kept insured for not less than the amount of preferred stock outstanding, all policies to be payable to third party, City Trust Cimpany, as trustee, for the use and benefit of interested parties, all insurance to be written by the third party and deposited with it for safe keeping.

The amount received from the sale of the preferred stock of the Delta Delta Delta Realty Corporation, less expense, to wit: $41,230.85, was received by the trust department of the City Trust Company, and was placed to the credit of Delta Delta Delta Realty Corporation, account construction, in a record kept in that department designated as "Trust Ledger No. 1, City Trust Company" in which other trust accounts were kept by the City Trust Company. The City Trust Company, in its trust department also entered the receipt of the cash proceeds received from the sale of the preferred stock in its cash book, being a record kept in its trust department. Deposits were received by the trust department of the City Trust Company for the benefit of the sinking fund as provided by the underwriting agreement, being credited and designated in the records of the trust department as "Delta Delta Delta Account, Sinking

Fund." These deposits were also entered in the cash book, kept in the trust department.

The money received by the trust department of the City Trust Company for the use and benefit of both of said funds, was deposited by an officer of the trust department with the banking department of the City Trust Company.

These funds were not kept in the form of separate, identified investments or segregated cash in the banking department, but they were commingled with other general assets of the trust company, and with other trust moneys and moneys belonging to the City Trust Company used in the conduct of its general business. There were no records kept by the banking department of the trust company, in any way identifying any of these funds as trust funds belonging to the Delta Delta Delta Realty Corporation, but such funds when deposited in the banking department by the trust department were entered in what was designated as "General Ledger Liabilities No. 2, City Trust Company" kept by the banking department, under an account designated as "Trust Department Account." This record showed all deposits and withdrawals made in the banking department by the trust department. When cash was to be expended from either of these funds, the proper officer of the trust department would draw a check on the banking department for the amount to be thus expended payable to the payee designated therein, there was no memorandum on the check to indicate the particular trust fund out of which the cash was to be paid. It was charged to the "Trust Department Account" by the banking department, and in the trust department was charged on its records to the particular trust account out of which it was withdrawn. When the appellant was appointed as receiver of the City Trust Company on November 18, 1930, the Delta Delta Delta Realty

Corporation had a balance of $7,997.29 to its credit in the construction fund account, and a balance of $45.89 to its credit in the sinking fund account.

The Citizens Loan and Trust Company of Bloomington was appointed as trustee under the underwriting agreement in lieu of the City Trust Company after its insolvency and is still acting in that capacity.

The first contention set forth and urged by appellant for a reversal of this cause is, that the terms of the underwriting agreement show that the two accounts in question were to have no higher status than general deposits. To sustain his contention, counsel for appellant has presented an ingenious and elaborate argument. We are not able to agree with this contention. When considered in its entirety, it is plainly apparent from all the terms of the underwriting agreement, that it was conceived and entered into by the parties thereto for the express purpose of procuring funds with which to erect a chapter house for the use of the first party to the contract, that in order to preserve and protect the funds so procured they were to be deposited with the third party (City Trust Company) "in trust on special deposit," to be withdrawn only on checks countersigned by a representative of such company, in payment of the cost of fourth party's new building upon architect's estimates furnished on the usual form.

Furthermore, the contract expressly provided, that the third party (City Trust Company) should "also act as sinking fund trustee for the purpose of receiving and applying the funds set apart by the fourth party for the payment of dividends on and redemption of its preferred stock" and that "such sinking fund" should "be held by the third party (City Trust Company) in trust on special deposit" and should "be withdrawn only for the purpose of paying dividends on and redeeming the

preferred stock at the respective times fixed therefor." Thus, is the paramount relation and duty of the City Trust Company to the other parties to the agreement defined and designated. How it could be more clearly and explicitly expressed in English language is hard to comprehend. The interpretation placed upon the contract by the trust company in the first instance indicates without the peradventure of a doubt that it regarded itself as trustee of the funds, otherwise there was no reason why it should receive the funds in its trust department and charge itself with them in that department as trustee. Having accepted the appointment and entered upon the duties imposed upon it under the contract as trustee, the appellee Delta Delta Delta Realty Corporation had no reason to anticipate or expect that the trust company would endeavor to renounce and repudiate its trust and create the relation of debtor and creditor between its trust and banking departments to the prejudice of the beneficiary. This court has recently held that such a relation cannot be created by a trust company without the knowledge and consent of the beneficiary under the trust. The facts in this case do not disclose any such knowledge or consent on the part of the beneficiary. *Terre Haute Trust Co.* v. *Scott* (1932), 94 Ind. App. 461, 181 N. E. 369.

The appellant insists that the provision to pay interest is of such controlling force that it has the effect of neutralizing all other conditions in the agreement, leading to but one conclusion, namely: that the parties intended to create the relation of debtor and creditor between the trust company and appellee Delta Delta Delta Realty Corporation. Such an interpretation of the contract, as we view it, would do violence to the intent, purpose, and meaning expressed therein when construed as a whole. A bank deposit may be made subject to any legal agreement which the depositor and the bank

may make respecting it, so long as it does not injuriously affect the rights of innocent third parties. While the agreement to pay interest on a deposit may be a circumstance to be considered in determining the relation of the parties, this of itself is not sufficient to overcome express provisions in a contract, designating a deposit as a special deposit to be held and used for a particular purpose. The relation as created by the underwriting agreement between the trust company and Delta Delta Delta Realty Corporation was one of trustee and *cestui que trust,* and the funds held by virtue thereof were trust funds. *Duncan* v. *Anderson* (1926), 120 Okla. 194, 250 Pac. 1018; *Blummer* v. *Scandinavian, etc., Bank* (1926), 169 Minn. 89, 210 N. W. 865; *Estate of William W. Law* (1891), 144 Pa. 499, 22 Alt. 831, 14 L. R. A. 103, 3 R. C. L. 517.

The next contention of appellant is, that even though the funds in question were trust funds, the finding and judgment of the trial court is not sustained by sufficient evidence and is contrary to law because the appellees failed to actually trace such funds into some specific property, constituting a part of the mass of the property passing into possession of the receiver, thereby augmenting the assets of the insolvent estate. In the case of *Rottger* v. *First-Merchants National Bank of Lafayette, supra,* where the same question was presented and contention made, it was held that the burden was upon the beneficiary to trace the funds in the manner as now contended for by appellant in this case, in order to be entitled to a preference over general creditors. The stipulated facts and the evidence in the instant case do not trace and identify the trust funds in compliance with the rule announced in the case of *Rottger* v. *First-Merchants Bank, supra,* and upon the authority of that case, and the authorities

therein reviewed and cited, we hold that the court erred in overruling appellant's motion for a new trial.

The judgment is reversed, with instructions to sustain the motion for a new trial, and also for further proceedings not inconsistent with this opinion.