BURNETT, ADMINISTRATOR *v*. KUMLER, RECEIVER.

[No. 14,850. Filed May 16, 1934.]

*P. M. Buchanan* and *Hiram G. Miller*, for appellant.

*Charles E. Emmons* and *Charles C. Campbell*, for appellee.

WOOD, C. J.—The facts were all stipulated in this case. From them it appears that Catherine Murray departed this life testate, in Fulton County, Indiana, on June 6,

1929. By her will she appointed the First State Bank of Kewanna, Indiana, as executor of her estate. This will was duly admitted to probate in the Fulton Circuit Court on June 11, 1929, and the bank, represented by D. W. Sibert, its president, qualified and entered upon the performance of its duties as executor on the same date. The bank continued to act in that capacity until January 25, 1930, when it was closed by the State Banking Commissioner, because of its insolvent condition. On June 29, 1929, the bank filed an inventory and appraisement of the personal estate of the testatrix showing the total amount thereof to be $15,556.21. Included in this inventory and appraisement were certificates of deposit issued to the decedent by the bank during her lifetime amounting to the sum of $5,580.66, also a cash balance as shown by her pass book issued to her by the bank during her lifetime, amounting to $2,753.52. On the same day that the inventory and appraisement were filed in the Fulton Circuit Court, the First State Bank, as executor, withdraw the sum of $1,865.22 from the American National Bank of Kewanna, which sum was evidenced by certificates of deposit issued by that bank to the decedent during her lifetime; said executor also sold United States bonds for which it received the sum of $671.83. The executor bank then opened an account in its own bank in the name of Mrs. Catherine Murray Estate, gave this account credit for the last two sums aforesaid, amounting to $2,537.05. This cash was deposited in and commingled with the general funds of the bank. The appellee, as receiver of said bank, made a report to the court of the administration of said decedent's estate by the bank, the financial portion of which was taken from the records kept by the bank. These records disclosed that from June 29, 1929, up to January 25, 1930, the bank, as executor of the Catherine Murray Estate, received and charged itself as such executor with

the sum of $7,002.53 in cash. From that amount it paid out in the administration of the estate the sum of $2,048.43, leaving a balance in the checking account of the Catherine Murray Estate on January 25, 1930, when the bank was closed, of $4,954.10. This cash when received by the bank as executor was not kept separate and apart from, but was deposited and commingled with the general funds of the bank, and augmented the assets of the bank in an amount equal thereto. In addition to this item the report showed that the bank as executor had in its possession the certificates of deposit which it had issued to the decedent during her lifetime as heretofore stated, which, together with the interest thereon, were all unpaid. It was also chargeable with four other small items amounting in the aggregate to the sum of $183.24, to which it will not be necessary to give further attention in this opinion.

Pursuant to an order of court duly made and entered in the Catherine Murray Estate, the appellant, as administrator *de bonis non* of her estate, filed a claim in the matter of the receivership of the First State Bank, asking that the checking account to the credit of said estate, the certificates of deposit, and the items amounting to $183.24, all of which, or the evidence thereof, had been surrendered to him as such administrator as the successor of said bank executor, be allowed and ordered paid as preferred claims out of the assets of said bank in preference to general creditors. This claim was heard by the court, allowed in the sum of $12,347.41 and ordered paid as a general claim. On January 25, 1930, when the First State Bank closed, it had on hand and in its vaults cash in sum of $2,198.39 and cash items amounting to the sum of $341.75, making a total of $2,540.14. This was the smallest amount of cash on hand and in the vaults of the bank at any time from June 6, 1929, to January 25, 1930, when the bank was closed. This cash

and the cash items all passed into the possession of appellee as receiver. No portion of the funds deposited in the bank by Catherine Murray during her lifetime, nor any portion received by the bank after it assumed the duties of executor of her estate was traced into any specific items of property or assets of the bank, which passed into the possession of appellee as receiver.

The appellant filed a motion for a new trial, the only causes alleged therefor and requiring our consideration being, that the finding of the court is not sustained by sufficient evidence and, that the finding of the court is contrary to law. The motion was overruled. Appellant appeals, assigning as the only error for reversal the overruling of his motion for a new trial.

We are first met by the contention of appellee that appellant's claim was drawn and tried upon the theory of debtor and creditor only, and not upon the theory of a preferred claim. From an examination of the record, it is clearly manifest that the paramount question before the trial court was whether the claim should be allowed and ordered paid as a preferred claim. The record does not sustain appellee's contention. In fact, in his brief, appellee says: "It is also agreed that the sole question before the court is as to whether or not said claim is a general claim or a preferred claim."

When the First State Bank of Kewanna qualified as executor and took possession of the assets of the estate of Catherine Murray, deceased, it thereby established the relation between itself and the estate of trustee and *cestui que trust*, and held all the assets which it thus received, as trustee, in trust, burdened with all the duties and responsibilities created by such a relationship. Under the facts in this case, the relation of debtor and creditor did not arise between the bank as a bank and the bank as executor, and the appellant was entitled to have his claim allowed and paid as

a preferred claim insofar as he was able to trace the funds which the bank received as executor of the Catherine Murray estate, either in their original or substituted form into specific items of property composing the entire mass of assets passing into the receiver's hands, thus augmenting such assets in any amount so traced. *Terre Haute Trust Co.* v. *Scott* (1932), 94 Ind. App. 461, 181 N. E. 369; *Rottger* v. *First-Merchants National Bank of Lafayette* (1933), ante, 139, 184 N. E. 267, petition to transfer denied by the Supreme Court January 31, 1934.

As being applicable to a proper determination of the respective rights of the parties in the instant case we quote from the Rottger case, *supra,* as follows: "We conclude, therefore, in the instant case, that the appellee, together with other claimants, if there are any. in the same class, is entitled to have a trust impressed upon the actual cash assets remaining on hand in the City Trust Company when appellant was appointed receiver and passing into his possession, thus augmenting the assets of the estate of the insolvent as a preferred claim; and if during the administration of the receivership it is determined that there are other claimants in the same class as appellee, and their claims are duly allowed as such, that said cash assets should be prorated among all such claimants in proportion to the amount of their respective claims. That the balance of appellee's claim remaining unsatisfied after the application of its portion of the cash assets thereon should be allowed as a general claim, unless the appellee can actually trace the funds belonging to the trust which it represents, into specific items of property composing the entire mass of assets passing into the receiver's hands, thereby augmenting same in any amount so traced, that as to any such amounts thus traced, appellee is entitled to have a preferred claim declared in its favor."

The judgment of the lower court is reversed, with instructions to sustain appellant's motion for a new trial, and for further proceedings consistent with this opinion