MARYLAND CASUALTY COMPANY *v.* ROTTGER, RECEIVER.

[No. 14,812.   Filed December 15, 1934.]

*James E. Rocap, John T. Rocap,* and *John J. Mc-Shane,* for appellant.

*Henry M. Dowling,* for appellee.

KIME, J.—This is an appeal from a judgment entered in the circuit court of Marion County, Indiana, in the cause of *State of Indiana ex rel.* v. *City Trust Company,* on the intervening petition of appellant, disallowing appellant's claim, as preferred, against appellee, but allowing it as a general claim.

It was stipulated, among other things, that the general agency contract hereinafter mentioned was entered into between City Trust Company and appellant; that in accordance with said contract the trust company procured casualty and surety business for appellant from July 15, 1926, to October 23, 1930, when the trust

company closed its doors by order of the bank commissioner of the State of Indiana. On the last mentioned date there was due to appellant by reason of premiums collected by the bank, less commissions and returned premiums, $644.38. It was the practice of the trust company in handling the said premiums for its insurance department, which was a unit of the trust company, to collect the premiums on policies issued by appellant and to enter such collections to appellant's credit on a cash book designated "Insurance Agent's Daily Balance Sheet," kept by the insurance department, as well as in a book denominated "Policy Register and Account Current," under the heading of appellant's name; and also to credit each of said collections to appellant upon a ledger kept by said department and designated as "Accounts Payable Ledger" under the heading of "Maryland Casualty Company." The insurance department, by its duly authorized representative, made out and delivered to the banking department of the trust company deposit slips for each of said collections and with such deposit slips delivered the collected premiums to the banking department and received credit therefor, on a deposit book issued to the insurance department by the banking department, which department credited the insurance department in the general ledger under the heading of "Account Insurance Department." Remittance of collected premiums to appellant herein were made at intervals by checks drawn by the trust company payable to appellant, and were paid through said banking department in the usual course of business, out of the general assets of the bank, and charged on the books of the banking department to "Account Insurance Department," and charged on the books of the insurance department to appellant. The trust company did not carry said collected premiums in separate and identified funds, but mingled all of said collections

with other collections of premiums of other insurance companies in its general assets and used the same, with other moneys, in the conduct of its general business, as a trust company. That the trust company, from time to time, prepaid to appellant certain premiums on policies issued before the trust company actually received said premiums from the respective policy holders; and in remitting the same to appellant the trust company deducted its agreed commission therefrom as if said prepaid premiums had been in fact collected from the policy holders. In such cases appellant did not know that the insured had not himself paid such premiums. The receiver for said trust company was appointed by the Marion circuit court and took charge of all assets of the bank, among which was $18,200.00 in cash.

The court rendered a judgment in favor of appellant for the sum of $756.00 as a general claim. The court denied appellant's motion for a new trial, which contained the assignments that the decision of the court was contrary to law and that it was not sustained by sufficient evidence. This appeal followed and appellant assigned as error the overruling of its motion for new trial.

The question presented is, were the collected premiums in the possession of the bank impressed with a trust?

Appellant contends that paragraph 9 of the general conditions of the general agency contract contains all the elements necessary to create an express trust, as between appellant and the trust company. That paragraph reads as follows:

"9. The agent shall, not later than the fifth day of each calendar month during the term of the agency hereby created, render to the Company a complete statement, in form such as the Company may require, showing the number and description of, and the premium on, each policy or bond written or issued by or through the Agent during the

preceding calendar month, including all monthly, quarterly or other installment premiums ascertained during such preceding month. The agent agrees that he will on the fifth day of the next following month pay to the Company in cash or in exchange on Baltimore or New York the balance due the Company as shown by the aforesaid monthly statement, whether by him collected or not; he also agrees that in addition to the said balance, he will include in each such payment to the Company all additional premiums on excess payrolls and all renewal premiums on fidelity and surety bonds, collected by him during the preceding calendar month, rendering to the Company a detailed statement of such additional and renewal premiums with each such payment. *The Agent further agrees to hold all premiums collected by him, less commissions thereon, for the company, as a fiduciary trust until payment shall have been duly made as aforesaid; and to so hold until duly paid over to the Company, all other money received by him for the Company."*

All elements necessary to establish a fiduciary relationship are present and under the clear, concise, and express words used in the above paragraph the ■ trust relationship continues until the payment of the collected premiums shall have been duly made, either by cash or in exchange on Baltimore or New York banks. The trust company had not paid the balance due the appellant as it was required to do under this paragraph and, therefore the features or elements of a trust were not destroyed, because nothing was done by the trust company that could bring about the destruction of the trust relation between it and appellant. In our opinion the trust continued until the trust company made the payment in cash or in exchange on Baltimore or New York banks.

Appellee contends that the provisions of paragraph 9 requiring the agent to remit the amount of premiums due appellant as shown by the agent's monthly state-

ment, whether collected or not, negatives the idea of a trust relationship. Can this be so when the language in that paragraph clearly and unequivocally provides that as to such premiums *actually* collected, the agent shall hold the same, less commissions thereon, for the appellant, as a fiduciary trust until payment shall have been duly made as provided in said paragraph? The amount of premiums involved herein had been actually collected received by the City Trust Company, as agent, and was held by it for appellant as a fiduciary trust at the time of the appointment of the receiver for the trust company.

Between the time of the collection of the premiums and the appointment of the receiver for the trust company, the trust company had not attempted to pay the premiums to the appellant as provided in paragraph 9 of the contract, and nothing was done by the trust company to destroy the trust relationship between it and appellant. Under that paragraph the trust continued until payment was made to the appellant of a sum of money equivalent to the amount of premiums collected.

The contract was executed, on behalf of appellee, by Miller, its president, and knowledge that the premiums collected by the trust company, as such agent, less commissions thereon, for appellant, were to be held as a fiduciary trust, until payment shall have been made, as provided in the contract, is, therefore, imputed to the bank, and when the receiver took charge of the assets of the appellee he took them subject to all legal and equitable claims. *Shopert v. Indiana National Bank* (1908), 41 Ind. App. 474, 83 N. E. 515; *Terre Haute Co.* v. *Scott* (1932), 94 Ind. App. 461, 181 N. E. 369.

A trust fund may be followed and recovered unless it has passed into the hands of a bona fide purchaser

without notice. Where the fund consists of ██ money the identification of the specific coin is not required. The ascertainment of the fund into which it has entered and lodges is sufficient. In this case the actually collected insurance premiums fund did not pass out of the hands of the trustee. It was merely transferred from one department to another and commingled with the general assets of the trustee. The method of keeping the record of the collections could not jeopardize the rights of appellant under the express trust. *Shopert* v. *Indiana National Bank, supra; Terre Haute Co.* v. *Scott, Receiver, supra; Pearce* v. *Dill* (1897), 149 Ind. 136, 48 N. E. 788. A trust company can not assume, in one capacity, the obligations and duties of a trustee, and repudiate that relationship to the disadvantage of the beneficiary by depositing the funds of the trust in its banking department and in case of insolvency estop the beneficiary from tracing the trust funds into the vaults of the trust company as a bank. The relation of debtor and creditor cannot be established by the trust company, in this case, by depositing its trust funds in the general cash of the banking department. *Terre Haute Trust Co.* v. *Scott, supra.*

Appellee asserts that the relationship between the parties was the same as though appellee had received from appellant a series of customers' promissory notes in payment of insurance premiums, and had undertaken to collect and had collected the same but had not remitted the proceeds, and under such circumstances would not be one of trustee, as appellant contends, but that of debtor only, and cites in support of such assertion cases predicated upon the collection of promissory notes and checks, which cases are not in point or controlling in the case at bar.

Appellant contends that because of the statement in

the general agency contract to the effect that appellee could pay the balance due appellant in cash or exchange on Baltimore or New York negatived the trust and created a relationship of debtor and creditor. As heretofore stated as to premiums actually collected and received by it, a trust was impressed upon them by the subsequent sentence in paragraph 9 which instructed the agent to hold the collected premiums for appellant as a fiduciary trust and to remit either in cash or by New York or Baltimore draft. The trust relationship, under the contract, existed as to the amount of premiums actually collected and not the uncollected premiums. In other words the trust relationship sprung into being when the agent actually received, from the policy holders, the amount of the premiums and continued until payment to the appellant was made either in cash or by New York or Baltimore draft.

In the case of *National Bank* v. *Insurance Company* (1881), 104 U. S. 55, A. J. Dillon, as general agent, had an account with the bank, which account the bank had knowledge contained the premiums collected by Dillon as general agent for appellee. In the course of its business the bank set off against this account, without the knowledge or consent of Dillon, a note executed by Dillon and wife. Dillon issued a check against this account, made payable to the secretary of the insurance company in payment of some premiums he had collected for appellee, less his commission. Because of the charging of the note against this account the check was returned for insufficient funds. In the meantime the bank started liquidating, according to law, and the insurance company brought suit to collect from the bank the money due on the check, which money the insurance company claimed was impressed with a trust and the court found for the insurance company and on appeal

the Supreme Court of the United States affirmed the lower court. The court in that case said, p. 70:

> "The relation of Dillon to the insurance company was one of confidence and trust. He was its agent for the collection of premiums, which belonged to it no less when in his hands than before their receipt by him. He was to account for them, under its directions, and in his entire dealing with them was bound to obey its orders. He was not merely its debtor for the amount in his hands. He held the funds for the use and as the property of the company. *Foley* v. *Hill,* 2 H. of L. Cas. 28. In a direct suit between them, *Dillon* v. *Connecticut Mutual Life Insurance Co.* (44 Md. 386) it was so expressly ruled, the Maryland Court of Appeals saying: 'Dillon not only held the fiduciary relation to the company of its agent, but was acting in respect to this and all the money he collected while such agent, under specific directions as to what he should do with it, directions which the company had the right, for its own protection and that of its policyholders, to have specifically performed. . . He must, we think, be regarded and treated as a trustee, and the fund thus in his hands must be considered as so far impressed with a trust as to give a court of equity jurisdiction of the case on that ground, if on no other.' "

In the case at bar we have specific directions as to when the trust results while in the above case the trust was, so far as the bank was concerned, merely implied, yet the court held that a trust existed and protected the insurance company.

In the relationship of bank and customer, it is the general rule that the bank is not required to hold the proceeds of a collection separate and apart from its own money. But if there is a special arrangement, such as in this case, the bank does not become the owner of the proceeds of the collection. Appellee cites, among others, the case of *Union National Bank* v. *Citizens Bank* (1899), 153 Ind. 44, 54, 54 N. E. 97. The court in that case said: "The collecting bank,

generally speaking, in the absence of any arrangement to the contrary, becomes the owner of the money collected. . ." In the case at bar there was an express arrangement that the money was to be held in trust for appellant. The fact that the trust company had to hold the collections for appellant as a fiduciary trust takes the case out of the general rule that the collecting bank becomes a debtor and not a trustee upon receiving the collection. The trust company, in its banking department knew that the money deposited therein by the insurance department, and entered in the ledger under "Account Insurance Department," was impressed with a trust. Even if it was deposited with the general funds of the trust company its character was not changed. The court, in *National Bank* v. *Insurance Company*, *supra*, said: "If the money belonged to a third person and was held by the depositor in a fiduciary capacity, its character is not changed by being placed to his credit, in his bank account."

The express intent of the parties was that the relation of a fiduciary trust should exist so long as the funds were held by the agent. The change in the method of transmittal was evidently for the convenience of the agent and with no intent on the part of the fiduciary to destroy the trust. The facts show that the premiums collected were always kept separate and apart from other funds. In the insurance department the funds were shown in that department's records in the name of appellant, and when deposited in the banking department were shown in the general ledger under the account denominated "Account Insurance Department."

Despite what we have said about the burden was upon the appellant to show that at all times after the funds herein sued for were deposited in the bank until the receiver's appointment the cash assets of the bank were, during that period, equal to or

more than the amount of the deposit so made. The stipulation of facts herein fails to show that the appellant has discharged this burden. *Rottger* v. *First-Merchants National Bank of Lafayette* (1934), 98 Ind. App. 139, 184 N. E. 267.[1]

The judgment of the Marion Circuit Court is, therefore, affirmed.

---

[1]The trust company, for which the appellee is receiver, was closed by the order of the bank commissioner of this state on the 23d day of October, 1930, and the receiver was appointed and qualified in the early part of November, 1930. Consequently the bank became insolvent, suspended business, and the liquidation thereof undertaken before Chapter 167 of the Acts of 1931 became effective, to wit: March 11, 1931, while the trust company in the case of *Union Trust Company* v. *Ralston* (1934) (Ind. App.), 191 N. E. 94, namely the Farmers Trust Company, was not declared insolvent until the 21st day of May, 1931. Therefore, the case at bar is in no way controlled by *Union Trust Company* v. *Ralston, supra*, but is in that line of cases controlled by *Rottger* v. *First-Merchants National Bank, supra*.